# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

IMMERSION CORPORATION,

       Plaintiff,

    v.

SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG ELECTRONICS CO., LTD.,

       Defendants.

Case No. 2:17-cv-00572-JRG
(LEAD CASE)

Case No. 2:18-cv-00055-JRG

**JURY TRIAL DEMANDED**

### SAMSUNG'S MOTION TO EXCLUDE THE
### OPINIONS AND TESTIMONY OF IMMERSION'S DAMAGES
### EXPERT PATRICK KENNEDY UNDER FED. R. EVID. 702 AND *DAUBERT*

██████████████████████

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  APPLICABLE LEGAL PRINCIPLES .................................................................... 1

III. FACTUAL BACKGROUND .................................................................................. 3

IV.  ARGUMENT ......................................................................................................... 11

   A.   Dr. Kennedy's Purported Apportionment Is Not the Product of Reliable Principles and
        Methods and Should Be Excluded ................................................................................ 11

   B.   Without Proper Apportionment, ██████████████████████
        Should Also Be Excluded .............................................................................. 15

   C.   Dr. Kennedy's Conclusions on Damages Should Be Excluded ...................................... 15

V.   CONCLUSION ....................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blue Spike, LLC v. Huawei Technologies Co., Ltd.*,
   2016 WL 9286102 (E.D. Tex. 2016) .......................................................................2, 11, 13, 15

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
   2016 WL 4440255 (E.D. Tex. 2016) (Gilstrap, J.) ........................................................ *passim*

*Core Wireless Licensing S.A.R.L v. LG Electronics, Inc.*,
   No. 2:14-cv-911, ECF No. 677 (E.D. Tex. Sept. 27, 2018) ........................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..........................................................................................3, 11, 12, 13

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
   No. 6:11-CV-00201-JRG, 2017 WL 1322555 (E.D. Tex. Apr. 6, 2017) .......................1, 3, 13

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) ................................................................................................11

*Garretson v. Clark*,
   111 U.S. 120 (1884)..............................................................................................................2

*Jacked Up, LLC v. Sara Lee Corp.*,
   291 F.Supp.3d 795 (N.D. Tex. 2018) ...................................................................................12

*Johnson v. Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) ................................................................................................13

*Open Text S.A. v. Box, Inc.*,
   2015 WL 349197 (N.D. Cal. Jan. 23, 2015) .........................................................................13

*Opticurrent, LLC v. Power Integrations, Inc.*,
   Case No. 17-cv-03597-WHO, ECF No. 186 (N.D. Cal. January 7, 2019)...............................12

*ResQNet.com. Inc. v. Lansa. Inc.*,
   594 F.3d 860 (Fed. Cir. 2010)................................................................................................1

*Robroy Industries–Texas, LLC v. Thomas & Betts Corp.*,
   2017 WL 1319553 (E.D. Tex. 2017) ....................................................................................11

*ROY-G-BIV Corp. v. ABB, Ltd.*,
   2014 WL 12465449 (E.D. Tex. 2014) .......................................................................2, 12, 15

*Sentius Int'l,* LLC *v. Microsoft Corp.*, 2015 WL 451950 (N.D. Cal. 2015)..................................15

*Victory Records, Inc. v. Virgin Records America, Inc.*,
    2011 WL 382743 (N.D. Ill. 2011) ..........................................................................................12

*VirnetX, Inc., et al. v Cisco Systems, Inc., et al.*,
    767 F.3d 1308 (Fed. Cir. 2014)....................................................................................2, 3, 15

*Wi-Lan Inc. v. Alcatel-Lucent USA Inc.*,
    2013 WL 10404065 (E.D. Tex. 2013) ..................................................................................13

## I.    INTRODUCTION

For ████████████████████████, Samsung and Immersion enjoyed a cooperative relationship.  Samsung was Immersion's first mobile phone customer for its TouchSense software, and the parties mutually benefited.  ███████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████.  That overreach led to a breakdown in the parties' relationship and the present litigation.

In this case, Immersion again seeks to overreach: it seeks a royalty for the six patents-in-suit that is ███████████████████████████████ █████████████████ ███████████████████████████████████████████████████ ███████.  Immersion is also demanding that Samsung pay nearly █████████████████ ████████████████████████████.  Immersion's unreasonable damages demand flows from the opinion of its damages expert, Patrick Kennedy, who has failed to apportion the incremental value of the patents-in-suit, contrary to the precedent of both this Court and the Federal Circuit.  His opinions should be excluded.

## II.    APPLICABLE LEGAL PRINCIPLES

The Federal Circuit has made clear that courts should take an active role in policing damages claims that are untethered to the actual value of the patented invention, and this Court has done just that, vacating verdicts that violate the requirement of apportionment and also preventing such verdicts by excluding unsound expert testimony.

A core tenet of patent damages law is that "damages must be tied 'to the claimed invention's footprint in the marketplace.'"  *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322555, at *4 (E.D. Tex. Apr. 6, 2017) (quoting *ResQNet.com. Inc. v. Lansa. Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)).  Therefore, "[t]he patentee . . . must in

1

every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 2016 WL 4440255, *10 (E.D. Tex. 2016) (Gilstrap, J.) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also VirnetX, Inc., et al. v Cisco Systems, Inc., et al.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (same).

While comparable benchmark licenses may sometimes be used for apportionment, special care must be taken when the benchmark licenses are directed to entire portfolios of patents.  This Court addressed that issue at a later stage of the *Core Wireless* case, after the plaintiff's expert relied on rates for a patent *pool* but failed to apportion out the value of the particular patents-in-suit.  Ex. 14, *Core Wireless Licensing S.A.R.L v. LG Electronics, Inc.*, No. 2:14-cv-911, ECF No. 677 at 7 (E.D. Tex. Sept. 27, 2018).  The Court explained that "*to be admissible*, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Id.* at 5 (emphasis added).  Because the expert failed to do so, "there was no evidence to permit the jury to determine the incremental value of the Asserted Patents," and the Court was forced to order a new trial.  *Id.* at 8, 14-15.

Apportionment of hybrid agreements involving software and patent rights to identify the value of patented features requires similar care.  In *Blue Spike, LLC v. Huawei Technologies Co., Ltd.*, the Court excluded expert testimony apportioning 10% of the value of software to patented features where no analytical framework was disclosed.  2016 WL 9286102, *4 (E.D. Tex. 2016); *see also ROY-G-BIV Corp. v. ABB, Ltd.*, 2014 WL 12465449, *3 (E.D. Tex. 2014) (same).

More generally, Federal Rule of Evidence 702 requires not only "[a] witness who is qualified," but also (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the

███████████████████████████████████

principles and methods to the facts of the case."  Of course, as the Supreme Court observed in

*Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky

but admissible evidence."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).

Even so, the law is clear that experts who inflate damages through improper methodology must

be excluded.  *E.g.*, *VirnetX*, 767 F.3d at 1328 ("the district court should have exercised its

gatekeeping authority to ensure that only theories comporting with settled principles of

apportionment were allowed to reach the jury"); *Eidos Display*, 2017 WL 1322555, at \*5.

## III.    FACTUAL BACKGROUND



> ***Dr. Kennedy's "reasonable" royalty:***  Immersion's expert Dr. Kennedy opines that a
>
> reasonable royalty in this case for the six patents-in-suit amounts to ███████.  (Ex. 1,
>
> Kennedy Rept. ¶ 360.)  By comparison, he admits ██████████████████
>
> ████ ████████████████████████████ in 2013.  (*Cf. id.* ¶ 83 (effective rates for
>
> 2013 Samsung/Immersion Agreement ranging from ████████████ depending upon
>
> volume estimates).)  Indeed, when Dr. Kennedy includes estimated volumes for all the time
>
> periods covered by the 2013 agreement, he admits that the effective rate is between ████
>
> ████████, again less than ████████ that Immersion now seeks.  (*Id.* ¶¶ 188-201.)
>
>          Dr. Kennedy also admits that the ███████████████████
>
> ████████████████████
>
> ████████████████████████████████████.

(Ex. 1, Kennedy Rept. ¶¶ 99, 101, 102.)  Dr. Kennedy further admits that Immersion has over

3,000 pending and issued patents.  (*Id.* ¶ 6.)  In addition, Dr. Kennedy admits that the 2013

agreement █████████████████████████.  (*Id.* ¶ 74.)

         Dr. Kennedy's report also contains important admissions about another benchmark

██████████████████████████████████████

license, between Immersion and Apple.  To start, Dr. Kennedy admits that Apple is Samsung's

largest U.S. competitor.  (Ex. 1, Kennedy Rept. ¶ 48.)  Next, Dr. Kennedy admits that the

Apple/Immersion License was entered close in time to the hypothetical negotiation (two years

later in early 2018).  (*Id.* ¶ 182.)  Dr. Kennedy also admits that Apple paid ████████████

████████████.  (*Id.* ¶¶ 184-185.)  While Dr. Kennedy ████████████████████

████████████, Immersion's CFO and Rule 30(b)(6) witness Nancy Erba agreed that Apple's

██████████████████████████████████████████

██████████████████████████.  (Ex. 2, Erba Dep. at 244:5-248:16; Ex. 3,

Dougherty & Company LLC, Mobile Computing Report.)  Even so, Dr. Kennedy admits that

████████████████████ had little or no impact on his damages opinion in this case.  (Ex. 1, Kennedy

Rept. ¶ 334 (giving no weight to Apple agreement).)

*Dr. Kennedy's methodology for calculating his royalty:*  Dr. Kennedy bases his damages

opinion on a hypothetical negotiation.  (Ex. 1, Kennedy Rept. ¶ 65.)  He uses all U.S. sales of the

accused products during the relevant time frames as his royalty base.  (*Id.* ¶ 75 (66 million

units).)  And he calculates his royalty rate using benchmark licenses (the "market approach").

(*Id.* ¶¶ 76-78.)  Dr. Kennedy finds Immersion's agreements with LG and Kyocera most relevant,

but also gives some weight to Immersion's agreements with Samsung and Motorola.  (*Id.* ¶ 334.)

First, Dr. Kennedy gives the most weight to Immersion's agreement with LG.  However,

he admits that LG has a smaller U.S. market share than Samsung (Ex. 1, Kennedy Rept. ¶ 48),

and that ████████████████████████████ (*id.* ¶ 297).  He also admits that

████████████████████ (near the time of the hypothetical negotiation) was ████████████

██, and that ████████████████████████.  (*Id.* ¶¶ 129, 134, 140-142.)

Second, as to Kyocera, Dr. Kennedy admits that it is a much smaller player in the U.S.

market than Samsung, with a market share of 1-2%. (Ex. 1, Kennedy Rept. ¶ 234.)  He also

admits that " ███████████████████████████████████████████████████████████████████████

███████████ in the hypothetical negotiation." (*Id.* ¶ 233.)  Nevertheless, he considers both the LG

and Kyocera agreements████████████████████████████████████████████ with

Immersion than Samsung's own agreements with Immersion.  (*Id.* ¶ 334.)

      Third, Dr. Kennedy also bases his opinion on the Motorola/Immersion agreement even

though he admits the agreement "is not as directly comparable to Samsung" and that Motorola is

a much smaller player in the U.S. market than Samsung, with a market share of 3.3%.  (Ex. 1,

Kennedy Rept. ¶ 240.)  Dr. Kennedy also notes that the Motorola agreement was a

settlement.  (*Id.* ¶ 334.)  And he admits that Motorola's ██████████████████████████████

███████████████.  (*Id.* ¶ 147.)

      Finally, █████████████████████████████████ Samsung/Immersion Agreement,

Dr. Kennedy████████████████████████████████████████████████████████████████

███████████████████.  (Ex. 1, Kennedy Rept. ¶¶ 188, 201.)  Dr. Kennedy then

applies upward adjustments ████████████████ to account for differences he identified between

the 2013 Samsung/Immersion Agreement and the hypothetical negotiation.  (*Id.* ¶¶ 202-226.)

      ***Dr. Kennedy's apportionment:***  Dr. Kennedy recognizes that apportionment is required

because the 2013 Samsung/Immersion Agreement████████████████████████████████████

████████████████████████████ and because all of his benchmark agreements include ████████

████████████████████████ not just the six patents-in-suit.

      To apportion ████████████████████████████ in the 2013 Samsung/Immersion

Agreement, Dr. Kennedy focuses on one data point: what ███████████████████████████

██████████████████████████████████████  (Ex. 1, Kennedy Rept. ¶¶ 205, 207.)

Based on this data point, Dr. Kennedy concludes that 90% of the effective per-unit royalty for Samsung's payments under the 2013 agreement could be ██████████████████████████ (*Id.* ¶ 207.) Dr. Kennedy does not mention that Immersion took the position for tax purposes that ████████████████████████████████████████████. (Ex. 4, Jose Dep. at 162:5-12; Ex. 5, Jose Declaration at ¶ 30.)

To apportion the value of Immersion's ████████████████████████████████ t, Dr. Kennedy simply looks to his client. Namely, Dr. Kennedy relies on conversations with Immersion's Vice President of Intellectual Property Portfolio Management and Litigation, Catherine Maresh. (Ex. 1, Kennedy Rept. ¶¶ 347-353.) First, Dr. Kennedy eliminates ████ of Immersion's patents with these three sentences:

> I am *informed* by Immersion that the definitions and fields of use in the Basic Haptics patents licenses narrow the number of patents and patent families that ████████████████████████████.

> *Catherine Maresh*, Immersion's Vice President of Intellectual Property Portfolio Management and Litigation, *reviewed* Immersion's mobile patent portfolio *to identify* ████████████████████████████ described above. I *understand* that *Immersion's review identified* ██████████████████████████.

(*Id.* ¶¶ 347-48 (emphases added).) Notably, while Ms. Maresh ███████████████████████████ ████████████████████████████, Dr. Kennedy provides no detail regarding how this eliminates all but the ██ patents listed in Schedule 13 to Dr. Kennedy's report. In deposition, Dr. Kennedy also admitted that he relied solely on Ms. Maresh for this crucial point. (Ex. 6, Kennedy Dep. at 105:16-107:20 (". . . Catherine Maresh has given me the specific set of 15 patents ██████████████████████████."), 192:21-195:19.)

Next, Dr. Kennedy again relies upon Ms. Maresh's say-so for the proposition that the six patents-in-suit represent 90% of the value of ████████████ listed in Schedule 13:

██████████████████████████████████████

*According to Ms. Maresh* ██████████████████████ not asserted in this litigation should be ascribed no more than 10 percent of the value of the ██████████████████████ while the 6 asserted Patents-in-Suit should be attributed with 90 percent of the value.

(Ex. 1, Kennedy Rept. ¶ 352 (emphasis added).)  Based on this "analysis," Dr. Kennedy "apportioned out 10 percent of the per unit royalty rates to account for features that were licensed but are not the allegedly infringing features of the Patents-in-Suit." (*Id.* ¶ 353.)  In deposition, Dr. Kennedy again admitted to relying entirely on Ms. Maresh for this apportionment.  (Ex. 6, Kennedy Dep. at 227:13-19 ("Q. But ultimately, you came up with 90 percent allocation based on your conversation with Ms. Maresh; right? A. Correct. Q. And did you take what Ms. Maresh said at face value? A. Yes."); *see also id.* at 105:16-106:19.)

Dr. Kennedy does not provide any apportionment methodology that could be tested during cross-examination.  He cryptically notes that Immersion's technical experts, Dr. Gutwin and Dr. Howe, "approved" his approach (Ex. 1, Kennedy Rept. n.574), but Dr. Gutwin and Dr. Howe's own reports say nothing about apportionment or Immersion's non-asserted patents.  In deposition, Dr. Kennedy acknowledged that Dr. Gutwin and Dr. Howe did not perform an analysis comparing the patents in Immersion's portfolio to the patents-in-suit.  (Ex. 6, Kennedy Dep. at 228:4-9, 234:16-19, 240:11-20.)  Dr. Kennedy also cites no evidence to establish that no other Immersion patents cover Basic Haptics.

To the contrary, there is substantial evidence in the record inconsistent with Dr. Kennedy's reliance on Ms. Maresh's assertions that only ███ of Immersion's 3,000 patents ██████ ████████████ and that 90% of the value of these patents is attributable to the six patents-in-suit.

For one, the 2013 Samsung/Immersion Agreement contains ████████████████

████████████████████████████████████████████████████████████

██████ (Ex. 7, 2013 Samsung/Immersion Agreement at §§ 1.29, 2.1 (emphasis added).)  And



██████████████

███████████████████████████

████████████████████████████

██████. (*Id.*)

In addition, Ms. Maresh's assertion to Dr. Kennedy that ████████████ listed in Dr.

Kennedy's Schedule 13 are Immersion's only patents █████████████ inconsistent

with her deposition testimony.  In deposition, she was not even able to ████████████:

Q.    What is basic haptics?

A.    So it's a business term that's been used to define certain haptic
functionality.

Q.    What haptic functionality?

A.    Marketing material will show you the best. And I know that there's been
some -- sometimes they've negotiated a definition in license agreements.

Q.    So sitting here as Immersion's corporate representative, aside from the
license agreements and marketing material, do you have a description of
"basic haptics"?

A.    No, I mean, I'd look at the presentations we've had on basic haptics, et
cetera. And that gives you the broad, general-term definition.

Q.    And what is your understanding of basic haptics?

A.    It's straightforward haptics. …

(Ex. 8, Maresh Dep. at 102:19-103:18.)

Immersion's witness on licensing, Francis Jose, also could not ████████████ or

even say if the patents-in-suit ██████████ (Ex. 4, Jose Dep. at 116:12-118:14 ("Q. So

how would someone looking at a phone know if ████████████████ A. I'm

not sure…. Q. Okay. Do the – the patents asserted in this case ████████████ A. I don't

know…. Q. So would you agree that at least those ████████████████

████████████████ ████████████ A. I don't make any conclusions one

way or another…. Q. Your last answer, that you don't know whether those patents ████████

8

your testimony as Immersion's representative on licensing topics? A.  Yes.").)

Immersion's CFO, Nancy Erba, also testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮: "Again, I think ▮▮▮▮▮▮▮▮▮▮▮▮, and as we use it in

agreements, really is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. So certain

customers may ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮." (Ex. 2, Erba Dep. at 111:25-112:6.)  This too is

inconsistent with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Furthermore, Ms. Maresh and the other Immersion witnesses gave testimony inconsistent

with 90% of ▮▮▮▮▮▮▮▮▮▮▮ being attributable to just the six patents-

in-suit.  Ms. Maresh testified that "[a]ll of the patents in Immersion's portfolio are valuable, and

they all have their importance in different contexts." (Ex. 8, Maresh Dep. at 198:22-199:4.)  She

also flatly testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮. (*Id.* at 226:4-7.)  Ms. Maresh also testified that Immersion

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮(before they were reinstated) (Ex. 8,

Maresh Dep. at 193:15-194:11), or ▮▮▮▮▮▮▮▮▮▮ (*id.* at 180:10-19).

Immersion's CFO, Ms. Erba, similarly testified that Immersion ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮. (Ex. 2, Erba Dep. at 57:5-58:16, 66:3-8.)

Other evidence of record is inconsistent with Dr. Kennedy's 90% apportionment.  For

example, Immersion's presentations to Samsung ▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████████████████████

████████████████████████████ Immersion also asserted other patents against other phone

manufacturers, including during licensing negotiations (██ ███████████ and patent litigation

(against HTC, Motorola, and Apple).[2]  Immersion also accused Apple of infringing seven

patents, only one of which is asserted here (the '051 patent).  (Ex. 1, Kennedy Rept. ¶ 181; *see*

*also id.* ¶¶ 182, 251-52.)  Yet Dr. Kennedy assumes that there are no non-infringing alternatives

to the patents-in-suit, and the Immersion/Apple Agreement ████████████████████████

████████████ of the patents-in-suit.  (*Id.* ¶¶ 259-264.)

Finally, Immersion failed to disclose its positions on apportionment in discovery.  Not

only were Ms. Maresh's statements during deposition inconsistent with the 90% apportionment

(discussed above), its interrogatory answer relating to damages revealed nothing about its current

apportionment theory, instead stating that it "will provide an expert report quantifying its

damages."  (Ex. 10, Immersion's Resps. to Samsung's Interrogs. at 71.)  Yet its expert ended up

relying entirely on an *Immersion employee*, Ms. Maresh, for apportionment.

In short, the record is filled with evidence inconsistent with Dr. Kennedy's reliance on his

client's bare assertion that 90% of the value of Immersion's patent portfolio may be attributed to

---

[1] For example, ██████████████████
████████████.  (Ex. 9, Immersion Presentation at IMMR_SEC00519851; Ex. 4,
Jose Dep. at 180:23-185:4.)  Immersion also stated that it had "crossed the 600 issued patent
threshold" at that time and that the three patents referenced in the presentation were "highlighted
in the press release as proof points of the growing strength of Immersion's portfolio."  (Ex. 9,
Immersion Presentation at IMMR_SEC00519851-852; *see also* Ex. 4, Jose Dep. at 182:24-
183:2.)  Other Immersion presentations to Samsung included references to Immersion's overall
portfolio.  (*E.g.*, Ex. 4, Jose Dep. at 195:10-196:20; Ex. 12, Immersion Presentation at SAM-
IMM00118882.)

[2] For example, ██████████████████████████████████████
███████████████ Immersion sued HTC on the '105 patent; and it sued Motorola on both the
'105 patent and U.S. Patent 7,592,999 (the '999 patent).  ███████████████████████████
█████████████████████ Ex. 1, Kennedy Rept. ¶¶ 143, 174.)

████████████████████████████

the patents-in-suit.  Samsung's expert, Chris Bakewell, summarizes more of this evidence in his

own report.  (Ex. 11, Bakewell Report ¶¶ 373-385.)

## IV.    ARGUMENT

### A.    Dr. Kennedy's Purported Apportionment Is Not the Product of Reliable Principles and Methods and Should Be Excluded

There can be no question that portfolio licenses must be apportioned to the patents-in-suit

and that software licenses must be apportioned to the value of patented technology.  *E.g.*, Ex. 14,

*Core Wireless*, No. 2:14-cv-911, ECF No. 677 at 5, 7-8, 14-15; *Blue Spike,* 2016 WL 9286102 at

*4.  In this case, Dr. Kennedy opined that entire value of Immersion's ████████████████

████████████████████████████ listed in his Schedule 13, that 90% of the value of

████████████ should be attributed to the six patents-in-suit, and that 90% of the value of the

2013 Samsung/Immersion license █████████████████████████████.  (Ex. 1,

Kennedy Rept. ¶¶ 207, 347-48, 352-53.)  None of these conclusions on apportionment are

supported by reliable principles and methodology, or *any* discernable methodology.

*Apportionment of* ████████████████ *portfolio* ████████  Dr. Kennedy's

attribution of the *entire* value of Immersion's ██████████████████████████

listed in Schedule 13 is based on nothing but the say-so of his client, Catherine Maresh.  (Ex. 1,

Kennedy Rept. ¶¶ 347-48.)  The law is clear this is impermissible.

The Rules of Evidence do not permit an expert to "become the mouthpiece of the

witnesses on whose statements or opinions the expert purports to base his opinion."  *Factory*

*Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013); *see also Robroy Industries–*

*Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, *9 (E.D. Tex. 2017) ("An expert who

parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's

dummy.").  More importantly, *Daubert* does not permit an expert to base his opinion simply on

his client's *ipse dixit* because this would violate the fundamental premise of Rule 702 and *Daubert* that an expert must *disclose* and rely upon recognized *methodology* that can be examined and tested. *E.g.*, *Jacked Up, LLC v. Sara Lee Corp.*, 291 F.Supp.3d 795, 802-804 (N.D. Tex. 2018) (excluding damages opinions based on client say-so, noting that "[t]he Federal Rules of Evidence and the requirements of *Daubert* are not satisfied where ... the expert fails to show any basis for believing someone else's projections").

ROY-G-BIV Corp., 2014 WL 12465449 at *3 from this District is analogous to the facts at issue here.  There, the Court excluded an expert opinion that apportioned 70% of the value of software to patented features, where this apportionment was based primarily on conversations with party employees.  The Court explained:  "Mr. Nawrocki's 70% apportionment appears to be arbitrary due to a lack of sufficient analytic support and is therefore inadmissible under Federal Rule of Evidence 702. . . . Lacking any objective or even substantial qualitative analysis to demonstrate why 70% is the proper apportionment, Mr. Nawrocki's 70% is reminiscent of the rejected 25% rule of thumb."  *Id.*  Other courts have excluded unreliable expert testimony in similar situations.  *E.g.*, Ex. 15, *Opticurrent, LLC v. Power Integrations, Inc.*, Case No. 17-cv-03597-WHO, ECF No. 186 (N.D. Cal. January 7, 2019) (excluding damages expert for, *inter alia*, unreliable apportionment, noting that "[i]nstead of following reliable principles and methods using sufficient facts or data, he simply became a mouthpiece for plaintiff's theory of damages in violation of Federal Rule of Evidence 702 standards"); *Victory Records, Inc. v. Virgin Records America, Inc.*, 2011 WL 382743, *2 (N.D. Ill. 2011) (collecting cases excluding expert opinions based on client's financial projections).

Even beyond Dr. Kennedy's unquestioning reliance on his client's opinions, his failure to disclose any *methodology* renders his opinion unreliable.  In the 2016 *Core Wireless* decision,

███████████████████████████████████████

this Court ordered a new trial on damages where the expert failed to provide "a logical opinion

supported by evidence." 2016 WL 4440255 at *14. The Court explained "that such an approach

is fundamentally arbitrary and analogous to other 'rule of thumb' valuation practices the Federal

Circuit has consistently rejected." *Id.* Other cases in this District and elsewhere support the

same result. In *Eidos Display*, the Court held that "[t]he reliability prong [of *Daubert*] mandates

that expert opinion 'be grounded in the methods and procedures of science and . . . be more than

unsupported speculation or subjective belief.'" 2017 WL 1322555, at *2 (citing *Johnson v.

Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012)); *see also Blue Spike,* 2016 WL 9286102 at *4

(excluding expert testimony apportioning 10% of the value of software to patented features

where no analytical framework was disclosed); *Wi-Lan Inc. v. Alcatel-Lucent USA Inc.*, 2013

WL 10404065, *3-4 (E.D. Tex. 2013) (excluding expert opinion that failed to identify

methodology for apportioning patent portfolio to patents-in-suit); *Open Text S.A. v. Box, Inc.*,

2015 WL 349197 at *6 (N.D. Cal. Jan. 23, 2015) ("What mandates exclusion here, rather than

simply subjecting the opinions to cross-examination . . . [is that] the link, if any, between those

inputs and Holt's final royalty is written in invisible ink.").

    Thus, Dr. Kennedy's apportionment of the entire value of Immersion's ██████████

██████████████████████████ listed in Schedule 13 must be excluded. Not only is it based on

the say-so of Immersion; it is not based on any disclosed scientific methodology. For example,

Immersion's technical experts have not examined the other patents in Immersion's portfolio and

compared them to successful products in the market. Moreover, as discussed in the fact section,

Immersion's bare assertion ██████████████ drive the value of its portfolio is inconsistent

with substantial record evidence, including the inability of Immersion's fact witnesses to ██████

████████, Mr. Maresh's testimony that "[a]ll of the patents in Immersion's portfolio are

████████████████████████████████

valuable," and the fact that ███████████████████████████████████████████████████

do not appear in Schedule 13.  (Ex. 8, Maresh Dep. at 102:19-103:18, 198:22-199:4; Ex. 4, Jose

Dep. at 116:12-118:14; Ex. 1, Kennedy Report ¶¶ 251-52.)  The Court should exclude Dr.

Kennedy's apportionment opinion for at least this reason.

   ***Apportionment of the Schedule 13 patents to the patents-in-suit:***  Dr. Kennedy's

attribution of 90% of the value ██████████████ in Schedule 13 to the patents-in-suit should be

excluded for the same reason.  His apportionment is again based on the say-so Immersion's Ms.

Maresh, without any disclosed methodology.  Her opinion is inconsistent with the record

evidence, including the fact that ████████████████████████████████████

███████████████████████████ are not asserted in this case, the fact that ███████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ (Ex. 7, 2013 Samsung/Immersion

Agreement at § 2.1; Ex. 8, Maresh Dep. at 180:10-19, 193:15-194:11.)

   ***Apportionment of the 2013 Samsung/Immersion license to patents:***  Dr. Kennedy's

apportionment of 90% of the effective per-unit rate of the 2013 Samsung/Immersion Agreement

to patents is also not reliable.  He bases it on ██████████████, and ignores contemporaneous

documents in which Immersion ███████████████████████████████████████████████████

███████████████████████████.  (Ex. 1, Kennedy Rept. ¶¶ 205, 207; Ex. 4, Jose Dep. at

162:5-12; Ex. 5, Jose Declaration at ¶ 30.)  Dr. Kennedy's decision to apply a 90% rate based on

another company's license agreement in lieu of the position the parties took for tax purposes is

not reasonable given the penalties associated with inaccurate tax reporting and the fact that tax

reporting was not driven by this litigation.  Moreover, Immersion's licensing witness, Mr. Jose,

admitted tha ████ was not a "major player" in the U.S. mobile phone market.  (Ex. 4, Jose

Dep. at 273:14-22.)  Thus, this case is like the *Blue Spike* and *ROY-G-BIV* cases*, in which the

Court excluded arbitrary apportionment of software to patented features.  2016 WL 9286102 at

*4; 2014 WL 12465449 *3; *see also VirnetX*, 767 F.3d at 1333.  Again, Dr. Kennedy's opinion

should be excluded.

**B.      Without Proper Apportionment, the ████████████████
             ████████████████ Should Also Be Excluded**

As this Court recognized in its 2018 *Core Wireless* opinion, royalties paid for patent

portfolios are not a reliable guide to the value of individual patents without proper

apportionment.  Ex. 14, *Core Wireless*, No. 2:14-cv-911, ECF No. 677 at 5, 7-8, 14-15.  Other

courts have recognized the same.  *E.g.*, *Sentius Int'l, LLC v. Microsoft Corp.*, 2015 WL 451950,

*8 (N.D. Cal. 2015) (excluding portfolio license as not comparable to license for two patents).

In this case, since Immersion has failed to offer competent apportionment of its portfolio

licenses, they should be excluded, including Immersion's portfolio licenses ████████████

████████████████ (the agreements that form the basis of Dr. Kennedy's opinions).

**C.      Dr. Kennedy's Conclusions on Damages Should Be Excluded**

The only basis for Dr. Kennedy's conclusion on damages in this case is his analysis of

Immersion's ████████████████████████.  Dr. Kennedy's failure

to properly apportion is not a factual issue that should be presented to the jury—it is a legal flaw

in Dr. Kennedy's analysis.  Since he has failed to properly apportion these licenses, his entire

opinion should be excluded.  Exclusion is preferable to the inefficiency of multiple trials.

**V.      CONCLUSION**

For the foregoing reasons, Samsung respectfully submits that the Court should exclude

the opinion of Immersion's damages expert, Patrick Kennedy.

15

Date: February 4, 2019                          Respectfully submitted,


By: _/s/ Daniel A. Tishman_
       Ruffin B. Cordell
       TX Bar No. 04820550
       cordell@fr.com
       Michael J. McKeon
       DC Bar No. 459780
       mckeon@fr.com
       Indranil Mukerji
       MA Bar 644059
       mukerji@fr.com
       Stephen A. Marshall
       D.C. Bar No. 1012870
       Daniel A. Tishman
       D.C. Bar No. 1013923
       **FISH & RICHARDSON P.C.**
       1000 Maine Avenue SW
       Suite 1000
       Washington, DC 20024
       Telephone: (202) 783-5070
       Facsimile: (202) 783-2331

       Leonard E. Davis
       TX Bar No. 05521600
       ldavis@fr.com
       Tom Gorham
       TX Bar No. 24012715
       gorham@fr.com
       **FISH & RICHARDSON P.C.**
       1717 Main Street, Suite 5000
       Dallas, TX 75201
       Telephone: (214) 747-5070
       Facsimile: (214) 747-2091

       Frank J. Albert (*pro hac vice*)
       CA Bar No. 247741
       albert@fr.com
       **FISH & RICHARDSON P.C.**
       12390 El Camino Real
       San Diego, CA 92150
       Telephone: (858) 678-5070
       Facsimile: (858) 378-5099

Tony Nguyen
TX Bar No. 24083565
nguyen@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Ste. 2800
Houston, TX 77010
Tel: 713-654-5300
Fax: 713-652-0109

Melissa Smith
TX Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934 – 8450
Facsimile: (903) 934-9257

**COUNSEL FOR DEFENDANTS SAMSUNG
ELECTRONICS AMERICA, INC. AND
SAMSUNG ELECTRONICS CO., LTD.**

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that this document is filed under seal pursuant to the Protective Order (Dkt. No. 32) filed in this matter.

*/s/ Daniel A. Tishman*
Daniel A. Tishman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 4, 2019.

*/s/ Daniel A. Tishman*
Daniel A. Tishman

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Plaintiff Immersion Corporation and Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. met and conferred by email on February 1, 2019 and telephonically on February 4, 2019.  On February 4, 2019, Counsel for Immersion Corporation (Daniel Hubin) and counsel for Samsung (Daniel Tishman) met and conferred telephonically in compliance with Local Rule CV-7(h) regarding the relief requested herein.  Plaintiff Immersion and Defendant Samsung discussed the relief requested herein and were unable to reach an agreement, leaving the parties at an impasse. Plaintiff Immersion indicated that it therefore opposed the present motion.

*/s/ Daniel A. Tishman*
Daniel A. Tishman