**Public Version of Document Filed Under Seal Pursuant to Protective Order**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| IMMERSION CORPORATION, | Case No. 2:17-CV-00572-JRG |
| *Plaintiff,* | LEAD CASE |
| v. | Case No. 2:18-cv-00055-JRG |
| SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD. | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## PLAINTIFF IMMERSION CORPORATION'S
## *DAUBERT* MOTION TO EXCLUDE TESTIMONY BY
## <u>MR. W. CHRISTOPHER BAKEWELL</u>

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARD ..................................................................................... 2

III.  MR. BAKEWELL'S ANALYSIS IS UNRELIABLE BECAUSE IT
      IMPROPERLY CONVERTS THE LUMP SUM APPLE SETTLEMENT TO A
      PER UNIT FIGURE WITHOUT ACCOUNTING FOR SIGNIFICANT
      DIFFERENCES ............................................................................................. 6

      A.   Mr. Bakewell's Reliance On The Immersion/Apple Settlement ............ 6

      B.   ██████████████████████████████████████████████ ........ 7

      C.   ████████████████████████████████████████ ....................... 8

IV.   MR. BAKEWELL IMPROPERLY RELIED ON THE TFT ████████, WHICH
      IS NOT ECONOMICALLY OR TECHNOLOGICALLY COMPARABLE ................ 10

      A.   ████████████████████████████████████████ ........................ 10

      B.   Mr. Bakewell Ignores That TFT And Immersion Are Not Comparably
           Situated Economically .................................................................... 11

      C.   The TFT Settlement Involves Different Patents And Mr. Bakewell's
           Assumption Of Technological Comparability Is Flawed ..................... 12

V.    MR. BAKEWELL'S ULTIMATE ROYALTY RATE OPINION RELIES ON A
      DEFICIENT ANALYSIS OF NON-COMPARABLE LICENSE AGREEMENTS
      AND SHOULD BE EXCLUDED ...................................................................... 13

VI.   CONCLUSION .............................................................................................. 15

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Astrazeneca AB v. Apotex Corp.*,
    782 F.3d 1324 (Fed. Cir. 2015)..................................................................6, 13

*Bayer Healthcare LLC, v. Baxalta Inc.*,
    No. 16-cv-1122, 2019 WL 330149 (D. Del., Jan. 25, 2019) ..........................1, 5, 15

*In re Certain Mobile and Portable Electronic Devices Incorporating Haptics
    (Including Smartphones & Laptops) & Components Thereof,*
    Inv. Nos. 337-TA-1004, 337-TA-990, USITC Pub. 616456 .................................. 8

*DataQuill Ltd. v. High Tech Comput. Corp.*,
    887 F. Supp. 2d 999 (S.D. Cal. 2011)................................................................4, 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993)........................................................................................3, 4, 15

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)....................................................................3, 4

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...........................................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)..............................................................................4

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..........................................................................3, 14

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) (en banc) ...............................................................3

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017)..........................................................................5, 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)............................................................................4

*Samsung Elecs. Am., Inc. v. Tactile Feedback Tech., LLC*,
    Nos. IPR2016-00207, 2016-00202, 2016-00205, and 2016-00206 (P.T.A.B.
    Nov. 17, 2015) ..................................................................................................10

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

## TABLE OF AUTHORITIES
(continued)

**Page**

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)................................................................................4, 15

*Whitserve, LLC v. Comput. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012)....................................................................................1, 5

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010).................................................................................4

**Statutes**

35 U.S.C. § 284.............................................................................................................3

**Other Authorities**

Federal Rules of Evidence Rule 702.........................................................................2, 3

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

## I.    INTRODUCTION

Plaintiff Immersion Corporation respectfully moves the Court to exclude the reasonable

royalty opinion of Defendants' damages expert Mr. Christopher Bakewell under *Daubert*.

Mr. Bakewell calculated a ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████. He also found "indicative" of a low rate Samsung's one-time litigation

settlement payment to Tactile Feedback Technologies ("TFT").  Mr. Bakewell wholly failed to

account for significant differences between ████████████████ settlements and the

hypothetical negotiation in this case.  Courts routinely exclude such deficient opinions

purporting to ████████████████████████████, including a decision from another

District Court issued just over a week ago.  *See Bayer Healthcare LLC, v. Baxalta Inc.,* No. 16-

cv-1122, 2019 WL 330149, at *5-6 (D. Del., Jan. 25, 2019) (excluding running royalty opinion

based on insufficient analysis of only lump-sum agreements); *see also, e.g., Whitserve, LLC v.

Comput. Packages, Inc.,* 694 F.3d 10, 30 (Fed. Cir. 2012) ("lump sum payments [] should not

support running royalty rates without testimony explaining how they apply to the facts of the

case").

Mr. Bakewell relied on two ████████████████ agreements to calculate a royalty rate:

(1)    **Immersion – Apple Settlement:**  This is a settlement agreement between
Immersion and Apple that resolved infringement claims against multiple types of Apple
products—Apple iPhones, Macbook laptop computers, and Apple Watches. ██████████
██████████████████████████████████████████████████████████████

(2)    **Samsung – TFT Settlement:**  This is a settlement agreement between Samsung
and a non-practicing entity Tactile Feedback Technology ("TFT") unrelated to the
patents-in-suit. ████████████████████████████████████████████████████████
████████████████████████████████

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

Mr. Bakewell uses these agreements to arrive at an unreasonably deflated royalty rate, without even purporting to adjust the rates to account for undisputed, material differences between the agreements and the hypothetical negotiation.  In Paragraph 267 of his report, Mr. Bakewell states: "To ███████████████████████████████, I considered Apple's worldwide iPhone, Mac, and Apple Watch unit sales from September 19, 2014 to January 26, 2028."  The calculation is set out in Exhibit 7.0 to his report.  (Declaration of Daniel C. Hubin ("Hubin Decl.") Ex. 1 ("Bakewell Report").)  Mr. Bakewell did not account for any difference in geographic regions where the sales occurred or the fact that the hypothetical negotiation is U.S.-only.  The Apple agreement ███████████████████████████████████████ ████████████████████████████ at issue in this case, yet Mr. Bakewell again made no adjustments of any kind.

The Court should exclude this deficient analysis.  Mr. Bakewell (1) improperly ████████ ████████████████████████████████████████████ without properly accounting for the relevant royalty base to use as the denominator; (2) improperly compared these ████████ ██████████████████████████████ without accounting for the significant differences in the scope of such agreements, (3) insufficiently analyzed the technological comparability of the licensed products, and (4) failed to account for disputed validity and infringement in these settlement agreements.  Mr. Bakewell's treatment of the Immersion/Apple and Samsung/TFT settlements as if ████████████████ negotiated between a willing licensor and a willing licensee for the same scope of products, without the requisite analysis, renders his opinions unreliable and defective.

## II.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence permits admission of opinion testimony based on "scientific, technical, or other specialized knowledge" if the testimony "will help the trier of

Public Version of Document Filed Under Seal Pursuant to Protective Order

fact to understand the evidence or to determine a fact in issue . . . ."  To be admitted, the expert

testimony must also:  (1) be "based on sufficient facts or data," (2) be "the product of reliable

principles and methods," and (3) reliably apply "the principles and methods to the facts of the

case."  *Id.*  The party offering the testimony bears the burden of showing its admissibility.  *See*

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

     *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny, require the trial court

serve as a "gatekeeper" to "ensur[e] that an expert's testimony both rests on a reliable foundation

and is relevant to the task at hand."  509 U.S. 579, 597 (1993).  *Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 147 (1999), held that the trial court's gatekeeping obligation applies to all expert

testimony, not just "scientific" testimony of the sort addressed in *Daubert*.

     35 U.S.C. § 284 requires that damages for patent infringement must be "adequate to

compensate for the infringement, but in no event less than a reasonable royalty for the use made

of the invention by the infringer."  The hypothetical negotiation approach to determining a

reasonable royalty in patent cases attempts to ascertain the royalty that the parties would have

agreed upon had they successfully negotiated an agreement just before the infringement began.

*See Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

The first and second *Georgia-Pacific* factor allows consideration of "royalties received by the

patentee for the licensing of the patent in suit, proving or tending to prove an established

royalty," and "[t]he rates paid by the licensee for the use of other patents comparable to the

patent in suit."  *Id.*

     An expert who offers a comparable license opinion may only do so based on licenses

"sufficiently comparable to the hypothetical license at issue in suit."  *Lucent Techs., Inc. v.*

*Gateway, Inc.*, 580 F.3d 1301, 1325, 1327-330 (Fed. Cir. 2009). To use past patent licenses

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

under *Georgia-Pacific* factors 1 and 2, an expert must account for differences in the technologies involved and the economic circumstances of the contracting parties. *E.g.*, *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870–73 (Fed. Cir. 2010) (court erred by considering licenses without "factual findings that accounted for the technological and economic differences between those licenses and [the patent in suit]"); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319–21 (Fed. Cir. 2010) (ordering new trial on damages where lump sum licenses relied on were not shown to have been tied to expected volume, and running royalty licenses relied on resulted from litigation and were not comparable to the lump-sum opinion).

If differences in the technology and economic circumstances are not accounted for, a party could inflate—or, in this case, deflate—the reasonable royalty analysis with "conveniently selected licenses without an economic or other link to the technology in question." *ResQNet.com, Inc.*, 594 F.3d at 872. A court "should not rely on unrelated licenses to increase [or decrease] the reasonable royalty rate above [or below] rates more clearly linked to the economic demand for the claimed technology." *Id.* at 872–73. Thus, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

If a party "fails to tie the theory to the facts of the case, the testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011); *Daubert*, 509 U.S. at 595 (exclusion is the only remedy sufficient to protect against the inherent power of expert evidence); *see also DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011) ("The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded.").

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

Courts also have been skeptical of expert opinions based on converting a lump sum agreement into a running royalty. *Whitserve,* 694 F.3d at 30 (remanding for new trial on damages; "lump sum payments [] should not support running royalty rates without testimony explaining how they apply to the facts of the case."); *Bayer Healthcare LLC, v. Baxalta Inc.,* No. 16-cv-1122, 2019 WL 330149, at *6 (D. Del., Jan. 25, 2019) (excluding damages opinions: "Three of the four licenses include a lump-sum (upfront) payment.  The first license has no running royalty, and the remaining three combine a running royalty with lump-sum, milestone, and/or annual payments.  Dr. Rausser makes no effort to reconcile these features with the hypothetical license.").

Settlement agreements may be admissible only if the specific circumstances support reliance on them.  "[D]epending on the circumstances, a license agreement entered into in settling an earlier patent suit sometimes is admissible in a later patent suit involving the value of the patented technology, and sometimes is not." *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1368-69 (Fed. Cir. 2017) (citations omitted).  The Federal Circuit continued in *Prism Techs.*:

> As to settlements generally, the Supreme Court has explained the normal settlement calculus for litigants: "Most defendants are unlikely to settle unless the cost of the predicted judgment, discounted by its probability, plus the transaction costs of further litigation, are greater than the cost of the settlement package." *Evans v. Jeff D.*, 475 U.S. 717, 734, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986); *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (quoting *Evans*, 475 U.S. at 734). That formulation—enumerating "the cost of the predicted judgment," "its probability," and "costs of further litigation"—helps identify why and when a district court, conducting the inquiry required by Rule 403, can find earlier patent-suit settlements admissible in valuing a patented technology.

*Id.* at 1369.

An "earlier suit's settlement figure may be too low to the extent that it was lowered by the patent owner's discounting of value by a probability of losing on validity or infringement."

Public Version of Document Filed Under Seal Pursuant to Protective Order

*Id.*  The state of the litigation at the time the agreement relied upon was made is relevant to the probativeness of the agreement.  *See Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1336 (Fed. Cir. 2015) (a settlement that "arose only after the district court had held the patents valid and had made a finding of infringement," was "therefore similar to the setting of a hypothetical negotiation in which infringement and patent validity are assumed.")

## III. MR. BAKEWELL'S ANALYSIS IS UNRELIABLE BECAUSE IT IMPROPERLY CONVERTS THE LUMP SUM APPLE SETTLEMENT TO A PER UNIT FIGURE WITHOUT ACCOUNTING FOR SIGNIFICANT DIFFERENCES

### A. Mr. Bakewell's Reliance On The Immersion/Apple Settlement

The Apple Settlement resulted from the settlement of litigation in several forums.  In 2016, Immersion requested the International Trade Commission investigate Immersion's allegations that Apple iPhones, Macbook laptop computers, and Apple Watches infringed seven Immersion patents.  One of the patents asserted against Apple (the '051 patent) is also asserted in this case against Samsung; the others are not.  Mr. Bakewell did no analysis of whether the patents are technologically comparable to the patents-in-suit.  (*See* Bakewell Report at ¶¶ 258-270.)  Immersion also filed two District Court cases based on the same claims (stayed pending the ITC investigations), and an additional case in China asserting Chinese patents.  The parties settled ███████████████████████████████████████████████████████████, two years after the hypothetical negotiation in this case.  The ██████ in the Apple Settlement ████████████████████████████████████████████.  (Hubin Decl. Ex. 2 at IMMR_SEC00143550-551 (sections 1.2 and 2.1) and IMMR_SEC00143555 (section 5.1).)  Apple ███████████████████████████████████████.

Even though ████████████████████████████, Mr. Bakewell converted ████████ ███████████████████████████.  Though Mr. Bakewell states in his report that his "opinions are not a function of" the Apple agreement (Bakewell Report ¶ 446 & n. 590), there is

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

no question that this conversion is the heart of his "analysis."  While Mr. Bakewell attempts to

thread the needle by stating that his use of the Apple ▌▌▌▌▌ is merely "indicative" of his derived

per unit reasonable royalty rate (*Id.* ¶ 13), Mr. Bakewell's report and testimony confirm that the

Apple Settlement is the sole basis for his calculations that lead to his per-unit royalty number.  In

deposition, Mr. Bakewell confirmed that his ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.  (Hubin Decl. Ex. 3 at 89:7-90:9.)  The

report offers no other calculations supporting his pre-apportioned number.  (Bakewell Report

¶¶ 267, 301-310 (no other agreements used to support a number); Exhibit 7.0.)

**B.**   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Mr. Bakewell acknowledges that in trying to ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌   Mr. Bakewell's explanation for the calculation is in paragraph 267, where he

states: "▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌  I considered Apple's worldwide

iPhone, Mac, and Apple Watch unit sales."  (Bakewell Report ¶ 267.)  In other words,

Mr. Bakewell used the units for all products—iPhones, Macbook computers and Apple Watches

–without any adjustment for any differences in the products.  Mr. Bakewell did not factor into his

calculation the different nature of the products, the different average selling prices for the

products, the different profit margins, and the different technical attributes for the products.  Nor

did he factor in differences between products sold in any particular time period, ▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.  Mr.

Bakewell just treated all the Apple products the same for his calculation, without any adjustment

or analysis of why this would be reasonable.  ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌.

Public Version of Document Filed Under Seal Pursuant to Protective Order

Mr. Bakewell also did not address whether any of the products that he included use any

██████████████████████████████. Apple contested that its products infringed the

patents at issue in the litigation. *See In re Certain Mobile and Portable Electronic Devices*

*Incorporating Haptics (Including Smartphones & Laptops) & Components Thereof*, Inv. Nos.

337-TA-1004, 337-TA-990, USITC Pub. 616456, Respondents' Initial Post-Trial Brief filed on

May 31, 2017. At the time the parties entered into the agreement, the ITC had not yet issued a

decision. Indeed, Mr. Bakewell did not even analyze how many of Apple's licensed products

had even been accused of infringement. Mr. Bakewell neither provides nor references any

technological analysis to support his decision to ██████████████ notwithstanding

the vastly different nature of the products. He simply ████████████████████

██████████████ (whether similar to the accused Samsung phones or different, accused

or unaccused, infringing or non-infringing), from ████████

Mr. Bakewell thus has no basis to ██████████████████████████

████████████████████████████████. He has done nothing

to provide an analysis that reliably ties the Apple Settlement to the hypothetical negotiation in

this case. His opinions are therefore unreliable and should be excluded.

**C.** ████████████████████████████████████
████████████

Mr. Bakewell's analysis is also fundamentally flawed because he did not account for

differences between ████████████████████████████

████████. In other words, he did made no adjustments to ██████████████

████████████████████. Indeed, he acknowledged in deposition that he

treated all sales the same, ████████████████. (Hubin Decl. Ex. 3 at 202:13-

203:4 ████████████████████████

8

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

████████████████████████ "no mathematical adjustment.").)  Mr. Bakewell thus

treated ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Mr. Bakewell was not provided with any information about Immersion's foreign counterpart

patents. While he said he did his own research regarding Immersion's foreign patents, he has no

recollection of the details and he does not have any records of his research.  (*Id.* at 238:19-

240:2.)

      Without some information about the difference in sales in different geographies,

Mr. Bakewell's ████████████ cannot reliably be used to arrive at a value that is relevant to the

hypothetical negotiation in this case, which would involve only U.S. patent rights.

*       *       *

      Mr. Bakewell's unsupported assumption that all sales of all licensed Apple products

practice the patents asserted in this case ensures ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████. Because Mr. Bakewell performed no

analysis to adjust for the many undisputed differences between the facts of the Apple Settlement

and the hypothetical negotiation in this case, Mr. Bakewell's testimony is not reliable or helpful

to the fact finder in this case, and should be excluded. ████████████████████████

████████████████████████████████████████████████████

████████████ Mr. Bakewell would prejudice Immersion if presented to a jury.

IV.     **MR. BAKEWELL IMPROPERLY RELIED ON THE TFT ████████, WHICH IS
        NOT ECONOMICALLY OR TECHNOLOGICALLY COMPARABLE**

     A.    ████████████████████████████████████

Samsung's ████████████ TFT to settle litigation is not even remotely comparable

and Mr. Bakewell's reliance on this agreement, as "indicative" of a rate, further renders his

royalty analysis unreliable and flawed. The Settlement ████████████ between TFT

and Samsung was a result of litigation. (Hubin Decl. Ex. 4 (referencing No. 2:14-cv-00940-

JRG-RSP (E.D. Texas)); *id.* Ex. 5.) The case proceeded through claim construction, but settled

in January 2016, ████████████████. (Bakewell Report ¶ 278; Hubin Decl. Ex. 3

at 139:1-7; *id.* Ex. 4.) Samsung also challenged validity, having filed IPRs on the asserted

patents in November 2015. (*See* Hubin Decl. Exs. 6-9. Petitions for *Inter Partes* Review of U.S.

Patent Nos. 8,013,843, 8,068,100, 8,072,440, and 7,973,773 *Samsung Elecs. Am., Inc. v. Tactile

Feedback Tech., LLC*, Nos. IPR2016-00207, 2016-00202, 2016-00205, and 2016-00206

(P.T.A.B. Nov. 17, 2015). Under the TFT Settlement, ████████████████████

████████████████████████████████████████

████ (Hubin Decl. Ex. 4 at SAM-IMM00053406.)

     Mr. Bakewell said he takes no position on the admissibility of the TFT Settlement, and

that his opinions "are not a function" of the agreement. (Bakewell Report ¶ 281 and fn. 635.)

Yet he stated that the TFT Settlement is "indicative" of a lower value for the patents in suit.

(Hubin Decl. Ex. 4.) Mr. Bakewell made no adjustment based on the stage of the litigation, or

the fact that Samsung had pending IPR petitions on file when settlement took place. (*Id.*, Ex. 3

at 143:8-144:18 ("didn't see a need to make a dollar adjustment" based on stage of litigation;

"can't remember" whether he took IPRs into account one way or the other, but "do[esn't] see

10

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

that [he] wrote about it … in [his] report.").)  Mr. Bakewell also did not ask Samsung or its

experts in this case whether Samsung considered the TFT patents valid.

> **B.     Mr. Bakewell Ignores That TFT And Immersion Are Not Comparably Situated Economically**

The TFT Settlement and a hypothetical negotiation between Samsung and Immersion in

this case have virtually nothing in common.  TFT is a non-practicing entity.  (*Id.*, Ex. 4; Ex. 3 at

138:15-22.)  There is no evidence TFT ever sold any product.  TFT ███████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████.  (*See id.* Ex. 10; Ex. 6 at ¶ 14.)  And, when the

settlement agreement was entered into, TFT ██████████████████████████████████

████████████████████████████  (*Id.*, Ex. 4 at SAM-

IMM00053406.)

Immersion, on the other hand, is a publicly traded company that was founded in 1993 and

has been publicly traded since 1999.  (*Id.* Ex. 12 at IMMR_SEC00029307.)  Immersion has

offered many hardware and software products over its history, in diverse fields ranging from

medical, gaming, mobility, automotive controls, and industrial applications.  (*See, e.g.*, *id.*, Ex.

12; *id.*, Ex. 14 at IMMR_SEC000354946-949.)  At the end of 2017, Immersion employed

approximately 81 individuals full time, and has previously employed up to 184 individuals full

time.  (*Id.*, Ex. 12 at IMMR_SEC00029312; Ex. 13 at IMMR_SEC00355072.)  Immersion and

Samsung also are not strangers.  ███████████████████████████████████████████

████████████████████████, including █████████████████████████████████████

█████████████████████████████████████████████████████████████████████

(*Id.*, Ex. 15 at ¶¶ 99-105; and Ex. 16 at SAM-IMM00032223, at SAM-IMM00032227-231, and

at SAM-IMM00032235.)

Despite these differences between TFT and Immersion and the circumstances of the

disputes, Mr. Bakewell makes no adjustment to the rate derived from the TFT agreement.  Given

that Samsung filed IPR petitions on the TFT patents roughly two months before reaching a

settlement agreement, that ███████████████████████████████████████████████████

████████t, and ███████████████████████████████████████████████

██████████████████████ (*see id.* Ex. 15 at ¶¶ 278-283), it is not reasonable to have

made no adjustment whatsoever to any calculations derived from this agreement.

Mr. Bakewell's failure to adjust his derived rate makes his use of this ████████ as comparable to

the hypothetical negotiation unreliable and unfairly prejudicial to Immersion if presented at trial.

**C.     The TFT Settlement Involves Different Patents And Mr. Bakewell's
        Assumption Of Technological Comparability Is Flawed**

Mr. Bakewell also does not provide a sufficient basis to establish technological

comparability. He relies in part on ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████. (Hubin Decl. Ex. 3 at 142:3-144:18 ("d[idn't] think there was a need to make a dollar

adjustment"████████████████████████████████████).)  Further, Section 5.2 of the

TFT Settlement provides that ███████████████████████████████████████████████

████████ (*Id*. Ex. 4 at SAM-IMM00053409.)  And Mr. Bakewell did not ask anyone at

Samsung, or Samsung's experts in this case, ██████████████████████████████

████████████████████████████████████████████████████████████████████.

Because the hypothetical negotiation assumes that the patents are valid and infringed,

Mr. Bakewell's ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ means that his analysis of this agreement is not reliably tied to the

facts of the hypothetical negotiation in this case.  *Cf. Astrazeneca AB*, 782 F.3d at 1336

(settlement agreement entered "after the district court had held the patents valid and had made a

finding of infringement" are "therefore similar to the setting of a hypothetical negotiation in

which infringement and patent validity are assumed.")  By █████████████████████

███████████████████████████████████████████████████████████

███████████████████████████.  His opinions are unreliable and would be

prejudicial to Immersion if presented to a jury, and so should be excluded.

## V.   MR. BAKEWELL'S ULTIMATE ROYALTY RATE OPINION RELIES ON A DEFICIENT ANALYSIS OF NON-COMPARABLE LICENSE AGREEMENTS AND SHOULD BE EXCLUDED

Mr. Bakewell's ultimate royalty rate opinions are based on the Apple and TFT

agreements as starting points.  In his section 4.7, "Conclusions From the Quantitative Phase Of

My Analysis," Mr. Bakewell says he is considering Immersion's past licenses with other phone

manufacturers, but the only one from which he calculates a rate is the Apple Settlement.  (*See*

Bakewell Report ¶¶ 301-302.)  The only other data point to which Mr. Bakewell refers in the

summary of his quantitative analysis is the TFT Settlement.  (*See id.* at ¶ 304.)

As discussed above, Mr. Bakewell makes a series of unsupported assumptions█

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████.  While his ultimate opinion in this case is that

the hypothetical negotiation would result in a lump-sum agreement between Immersion and

Samsung, Mr. Bakewell's █████████████████████████████████████

████████  is fraught with the same problems that have led courts to exclude opinions about

hypothetical lump-sum agreements based on actual running-royalty agreements.

The Federal Circuit has explained that there are many significant differences between running-royalty licenses and lump-sum licenses, including what factors the parties would have considered in entering each type of agreement as well as what evidentiary record may be created subsequent to each type of agreement being entered into.  *Lucent Techs.,* 580 F.3d at 1325-26 ("[i]n a standard running royalty license, the amount of money payable by the licensee to the patentee is tied directly to how often the licensed invention is later used," while "the lump-sum license generally avoids ongoing administrative burdens of monitoring usage of the invention."). The court went on to note that parties to a lump-sum license "may, during the license negotiation, consider the expected or estimated usage (or, for devices, production) of a given invention, assuming proof is presented to support the expectation." *Id.* at 1327.

Mr. Bakewell has no evidence, documentary or otherwise, relating to either the Apple Settlement or TFT Settlement that allows him to determine what use was actually made of the ███████████████████████  ██████████████████████████████████ ████████████████████████████████████████████████████████. This is despite one of the ██████ being Samsung, on whose behalf he was retained.  Without any information about ████████████████████████████████████████████████ ████████, Mr. Bakewell simply adopts assumptions that ensure ██████████████████████ without any reason for doing so that relates these agreements to the facts of this case and its hypothetical negotiation.

This is the same deficiency that courts have found sufficient to require exclusion of expert damages opinions in other cases; Mr. Bakewell is essentially attempting to turn ███████ █████████████████████████████████████████████████████████ ███████  *See id.* at 1327-1330 (criticizing expert's running-royalty analysis from lump-sum

agreements for lack of any "documentary evidence or testimony showing the parties' expectation as to usage" of the claimed invention, and finding damages award unsupported where no basis existed in evidence to compare running-royalty agreement to lump-sum award); *Bayer Healthcare,* 2019 WL 330149, at *5 (excluding damages opinion as to a running royalty based on insufficient analysis of only lump-sum agreements, finding there is "no support for [the] proposition that a lump-sum may easily support a running royalty analysis" because the fundamental differences between the two types of licenses "would be relevant to any comparison between lump-sum and running royalty licenses.").

Mr. Bakewell's transformation ████████████████ does nothing to solve the underlying faults with his analysis ████████████████. Given that these two agreements are the only ones used by Mr. Bakewell to derive his reasonable royalty rate opinion, it is not reasonable that Mr. Bakewell's ultimate opinion on what that rate is in this case would not change at all even if the Court were to find that the Apple and TFT agreements are not reliably tied to the hypothetical negotiation in this case. His opinion should be excluded.

## VI.  CONCLUSION

Mr. Bakewell's royalty analysis is flawed and unreliable. He has "fail[ed] to tie the theory to the facts of the case, [and so his] testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011); *Daubert*, 509 U.S. at 595 (exclusion is the only remedy sufficient to protect against the inherent power of expert evidence); *see also DataQuill*, 887 F. Supp. 2d at 1022 ("The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded."). The Court should exclude Exhibit 7.0 and the corresponding paragraphs of Mr. Bakewell's Report (¶¶ 11, 13-15, 266-270, 275-285, 302-304, 356, and 359-365) and order that he be precluded from offering his flawed royalty opinion.

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

Dated:  February 4, 2019

Respectfully submitted,

*/s/ Bryan Wilson*

Bryan Wilson (CA SBN 138842)
LEAD ATTORNEY
Marc David Peters (CA SBN 211725)
Albert J. Rugo (CA SBN 306134) *admitted pro hac vice*
**MORRISON & FOERSTER** LLP
755 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: bwilson@mofo.com
Email: mdpeters@mofo.com
Email: arugo@mofo.com

Richard S. J. Hung (CA SBN 197425)
Christopher Robinson (CA SBN 260778)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7602
Facsimile: (415) 276-7334
Email: rhung@mofo.com
Email: ChristopherRobinson@mofo.com

Morgan Chu (CA SBN 70446)
Richard Birnholz (CA SBN 151543)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: mchu@irell.com
Email: rbirnholz@irell.com

T. John Ward Jr.
Texas Bar No. 00794818
Claire A. Henry
Texas Bar No. 24053063
Andrea L. Fair
State Bar No. 24078488
**WARD, SMITH &HILL, PLLC**
1507 Bill Owens Pkwy.

Public Version of Document Filed Under Seal Pursuant to Protective Order

Longview, TX 75604
Tel: 903/757-6400
Fax: 903/757-2323
Email: jw@wsfirm.com
Email: claire@wsfirm.com

*Attorneys for Plaintiff*
*Immersion Corporation*

pa-1882753

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order entered in this case (ECF No. 32).


_____

Dan Hubin


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in

compliance with Local Rule CV-5(a).  Pursuant to Local Rule CV-5(a)(7)(D), all counsel of

record were served with a true and correct copy of the foregoing by email on this the 4th day of

February, 2019.


_____

Dan Hubin

**Public Version of Document Filed Under Seal Pursuant to Protective Order**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that Plaintiff Immersion Corporation's counsel met and conferred with

Defendants' counsel pursuant to Local Rule CV-7(h) regarding the substance of this motion.

Defendants' counsel indicated that Defendants oppose this motion.


_____

Dan Hubin