IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IMMERSION CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.;<br>SAMSUNG ELECTRONICS CO., LTD.<br><br>*Defendants.* | Case No. 2:17-CV-00572-JRG<br>LEAD CASE<br><br>Case No. 2:18-cv-00055-JRG<br><br>**JURY TRIAL DEMANDED** |

**IMMERSION CORPORATION'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF IMMERSION'S DAMAGES EXPERT PATRICK KENNEDY UNDER FED. R. EVID. 702 AND *DAUBERT***

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | APPLICABLE LEGAL PRINCIPLES | | 1 |
| III. | ARGUMENT | | 2 |
| | A. | Dr. Kennedy Properly Relies On Comparable Licenses With Appropriate Adjustments To Reflect The Value Of The Patents-in-Suit | 2 |
| | | 1. Dr. Kennedy Reliably Apportioned The Value To Immersion's Patents Where Licenses Included Software | 3 |
| | | 2. The Facts Of This Case Suggest That Further Apportionment Of The Comparable Licenses Is Not Necessary | 5 |
| | | 3. Dr. Kennedy's Apportionment To The Patents-in-Suit Is Supported By Multiple Sources Of Information | 7 |
| | B. | Samsung's Own Expert, Mr. Bakewell, Relies Upon Dr. Kennedy's Apportionment Analysis When Calculating His Reasonable Royalty | 11 |
| | C. | The Cases Relied On By Samsung Do Not Support Exclusion | 12 |
| IV. | CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012)..................................................................................2, 4, 5, 12

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)..............................................................................................1, 2

*Blue Spike, LLC v. Huawei Techs. Co., Ltd.*,
   C.A. No. 6:13-CV-679, 2016 WL 9286102 (E.D. Tex. Oct. 14, 2016)..............................13, 14

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   No. 2:14-cv-911-JRG, 2016 WL 4440255 (E.D. Tex. Aug. 12, 2016) ....................................14

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...................................................................................................................1

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014).........................................................................................2, 3, 5

*Factory Mutual Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) ........................................................................................8, 12, 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S. Ct. 2238 (2011)..................1, 12

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)..................................................................................................2

*ROY-G-BIV Corp. v. ABB, Ltd.*,
   No. 6:11-cv-622, 2014 WL 12465449 (E.D. Tex. Aug. 1, 2014)........................................8, 13

pa-1884444

## I. INTRODUCTION

Samsung's Motion to Exclude the Opinions and Testimony of Immersion's Damages Expert Patrick Kennedy ("Motion") should be denied. Samsung argues alternatively that either Dr. Kennedy's methodology is flawed or that he applied no methodology at all. But Samsung's arguments are misleading, purposefully ignoring much of the evidence that Dr. Kennedy considered. And Samsung clearly understood the methodologies Dr. Kennedy employed; its own damages expert relies on the very apportionment opinions Samsung now seeks to exclude, and Samsung has had no difficulty pointing out evidence it would use to cross examine Dr. Kennedy and Immersion's witnesses about damages in this case.

As shown more fully below, Samsung's complaint is with the significance Dr. Kennedy attached to certain facts, not a dispute about the reliability of the methodology. The Court should deny the Motion.

## II. APPLICABLE LEGAL PRINCIPLES

Expert testimony is admissible if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). While the Court serves as the gatekeeper for expert testimony, "[a] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another. These tasks are solely reserved for the fact finder." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)).

"When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S. Ct. 2238 (2011); *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (disagreements with the factual assumptions and considerations underlying an expert's conclusions go to weight, not admissibility); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.").

This is particularly the case for damages experts, where "questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are 'for the jury.'" *Apple*, 757 F.3d at 1315 (quoting *i4i Ltd.*, 598 F.3d at 856). "[L]icenses may be presented to the jury to help the jury decide an appropriate royalty award." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) (citing *Monsanto Co. v. McFarling*, 488 F.3d 973, 978 (Fed. Cir. 2007)).

> Prior licenses, however, are almost never perfectly analogous to the infringement action. *VirnetX*, 767 F.3d at 1330. For example, allegedly comparable licenses may cover more patents than are at issue in the action, include cross-licensing terms, cover foreign intellectual property rights, or, as here, be calculated as some percentage of the value of a multi-component product. Testimony relying on licenses must account for such distinguishing facts when invoking them to value the patented invention. Recognizing that constraint, however, the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility.

*Id.* (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d at 1326). *See also ActiveVideo Networks*, 694 F.3d at 1333 ("The degree of comparability of . . . license agreements . . . [is a] factual issue[] best addressed by cross examination and not by exclusion.") (citing *i4i*, 598 F.3d at 852).

## III. ARGUMENT

### A. Dr. Kennedy Properly Relies On Comparable Licenses With Appropriate Adjustments To Reflect The Value Of The Patents-in-Suit

Following the comparable license approach endorsed by the Federal Circuit, Dr. Kennedy reaches his opinions by beginning with the most comparable licenses available, and then makes appropriate adjustments to tie the royalty rate to the value of the patents-in-suit. *E.g.*, *Ericsson, Inc.*, 773 F.3d at 1227-28. For example, Dr. Kennedy relies on Immersion's license agreements with ▮▮▮▮▮▮▮; manufacturers who (like Samsung) use Immersion patented technology to create haptic effects in their Android-based smartphones. (*See* Ex. 1 (Kennedy Report), ¶¶ 253-256.) The agreements all include patent rights necessary for each ▮▮▮▮▮▮▮ into their Android-based smartphones and, in some of the licenses, the right to use Immersion's haptic software. (Exs. 2, 3, and 4.)[1] As discussed further below, Dr. Kennedy apportions the royalty rates to account for the fact that some of these licenses include software in addition to patents.

#### 1. Dr. Kennedy Reliably Apportioned The Value To Immersion's Patents Where Licenses Included Software

Samsung's criticism that Dr. Kennedy's software apportionment purportedly is solely based on ▮▮▮▮▮▮▮ is incorrect. (*See* Kennedy Report, ¶¶ 202-207.) The ▮▮▮▮▮▮▮ is an input to the analysis because it ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. However, Dr. Kennedy did not rely solely on ▮▮▮▮▮▮▮. His software apportionment also relied on other licenses cited in his report and the per unit prices

---



[1] Immersion ▮▮▮▮▮▮▮

in ███████████████. (*Id.* at ¶¶ 202-203; Ex. 5 (Kennedy Dep.), 113:6-115:16.) Samsung's Motion ignores that Dr. Kennedy relied upon ███████ royalty rates for his software apportionment. ███████████████████████████████████████████████████████████████████. (*See* Kennedy Report, ¶¶ 206, 232.) However, even though evidence supports that no apportionment is necessary, to be conservative, Dr. Kennedy still applied an apportionment to ███████. (*Id.* at ¶ 232.)

Samsung's alternative—to apportion the value of software vs. bare patents based on ███████████—is misguided. First, as Dr. Kennedy notes, there is ███████████████████████ are accurate. (*See, e.g.,* Kennedy Report, ¶¶ 190-198; Ex. 6 (Jose Dep. Ex. 21) at ¶¶ 29-31.) Second, Francis Jose's statement ███████████████████ has nothing to do with the incremental value provided by the software over the bare patent license; it merely █████████████████ (Ex. 7 (Jose Dep.), 161:14-162:2; Ex. 8 (Erba Dep.), 216:4-23.) It also is based on Samsung's own potentially inaccurate information. (Ex. 6 at ¶¶ 29-31.) The ███████████ has nothing to do with the relative value of Immersion's software versus its patents.

In summary, Samsung's argument for exclusion of Dr. Kennedy's opinion is not based on a disagreement with his methodology, only with the facts he used and their significance. Indeed, Dr. Kennedy could have simply stopped his analysis after identifying evidence supporting that no apportionment is required given the nature of Immersion's business and its prior licenses

█████████████████████████████████████

████████████████ and now is being criticized for taking his analysis a step further to conservatively calculate an apportionment factor.

*ActiveVideo Networks, Inc.*, 694 F.3d at 1333, confirms that that this critique is, at best, an issue going to the weight of the evidence. In *Active Video*, Verizon argued that it was improper for the plaintiff's damages expert to analyze agreements that provided both patents and software services while attributing all the value to the patents "without any attempt to 'disaggregate the value of the patent license from the value of the [software] services.'" *Id*. The Federal Circuit held that "Verizon's disagreements are with the conclusions reached by ActiveVideo's expert and the factual assumptions and considerations underlying those conclusions, not his methodology. These disagreements go to the weight to be afforded the testimony and not its admissibility." *Id*. (citing *i4i*, 598 F.3d at 854).

### 2. The Facts Of This Case Suggest That Further Apportionment Of The Comparable Licenses Is Not Necessary

Samsung's critique of Dr. Kennedy's further adjustments suffers from the same core defects. Samsung fails to establish that any further apportionment to Dr. Kennedy's market approach is required, but then attacks Dr. Kennedy's conservative opinions on apportionment based on factual disagreements that clearly go at most to the weight of the evidence.

As an initial matter, Samsung ignores that Dr. Kennedy used a market approach, and that the license agreements Dr. Kennedy primarily relied upon already reflect the market value of the technology (subject to other adjustments that Dr. Kennedy made to account for differences between the actual market and hypothetical negotiation). *Ericsson, Inc.*, 773 F.3d at 1227-28 (license-based evidence is "relevant and reliable . . . where the damages testimony regarding those licenses takes into account" the principles contemplated in *Garretson*.). As Nancy Erba, Immersion's CEO, testified, ████████████████████████████████████ and while ████



███ (Ex. 8, 142:21-143:19.) She further explained that, in ███████, Immersion agreed to ████████████████████████████████████

████████. (*Id.* at 224:19-225:7.)

As Dr. Kennedy stated in his report, this reality of Immersion's licensing practices suggests that it is ***not*** necessary to adjust the patent royalty rates derived from Immersion's market-rate licenses to account for other patents included in the license. (Kennedy Report, ¶¶ 351, 353.) In each instance, the licensee is using Immersion patents to implement their own versions of basic haptics functionality on Android-based smartphones. For obvious reasons of administrative convenience, ████████████████████████████████████████████████. As Dr. Kennedy explains, ████████████████████ as adjusted for volume, geography, market changes in value, the timing of the agreements, and other considerations in his report, are indicative of the rates Samsung and Immersion would have agreed to in a hypothetical negotiation for just the six asserted patents, which Samsung uses to implement basic haptic functionality on its Android-based smartphones. Otherwise stated, these patent license royalty rates are market-based measures of the value that Android smartphone manufacturers place on the same or similar technology as the patents-in-suit, and they serve as a reliable foundation for Dr. Kennedy's opinion.

Further supporting this, Immersion's technical expert reports state that each of the patents-in-suit are important, enabling patents for haptics in Android smartphones. (Kennedy Report, ¶¶ 259-264.) These technical opinions tie the royalty rates in Immersion's ████

███████████████████████████████████

███████████████ to the value of these important, enabling patents. Dr. Kennedy's report cites the expert reports of Dr. Howe and Dr. Gutwin, Immersion's technical experts, where they opine that the patents-in-suit are "important to the implementation of haptics," are "enabling technology," and are "essential to the operation of haptics" in the accused Samsung devices (Kennedy Report, ¶¶ 32-45, 259-264.) Dr. Kennedy reiterated this understanding he gained from the technical experts in his deposition. (*See, e.g.*, Ex. 5 at 33:13-34:6, 73:8-74:9.)

As enabling patents, any of the patents-in-suit is needed for Samsung's desired haptic functionality, and would therefore support the licensing rate. (*Id.* at 69:7-12.) ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████

As Ms. Erba testified, ████████████████████ license to use Immersion's basic haptics patents, and it is what licensees are willing to pay for the right to include basic haptic functionality in their Android smartphones. (Ex. 8 at 142:21-143:19, 224:19-225:7.) As supported by Immersion's technical expert opinions, these portfolio rates are directly tied to the important, enabling technology in the patents-in-suit. ████████████████████ ██████████████████. (*Id.* at 57:5-14.)

Far from showing that Dr. Kennedy's apportionment is not reliable, this suggests that further apportionment of these licenses – beyond that already reflected in the market analysis – is not necessary in this case. Notwithstanding, as part of a rigorous economic comparability analysis, Dr. Kennedy presented a conservative analysis to be used in the event that the fact-finder concludes that the ████████████████████████████████████████ some incremental value.

pa-1884444

### 3. Dr. Kennedy's Apportionment To The Patents-in-Suit Is Supported By Multiple Sources Of Information

Dr. Kennedy's apportionment analysis includes ▮▮▮▮▮ as those that could potentially drive the value for the comparable licenses he analyzed, and he apportioned down further to the six patents-in-suit. (*See, e.g.*, Kennedy Report, ¶¶ 343-351.) Samsung does not appear to challenge the basic methodology Dr. Kennedy employed; rather, they assert that in doing so he relied exclusively on the "say-so" of Catherine Maresh, an Immersion employee. (Motion at 13-14.) But Samsung's assertion is simply wrong; Dr. Kennedy considered multiple sources of information in his apportionment analysis, including the terms of the comparable licenses, contemporaneous business documents, and discussions with technical experts. Dr. Kennedy certainly relied on conversations with Ms. Maresh and other knowledgeable Immersion employees as part of his analysis, as experts in his position commonly do. *Factory Mutual Ins. Co. v. Alon USA L.P.*, 705 F.3d 518 (5th Cir. 2013) (depreciation opinion based solely on a conversation with employees admissible because "the estimates of others constitute the sort of information reasonably relied upon by appraisers approaching valuation questions."). Moreover, Dr. Kennedy's assessment of other documentary evidence corroborating the information he obtained from the Immersion employees shows that he did not simply accept, uncritically, the "say-so" of the client. *Cf. ROY-G-BIV Corp. v. ABB, Ltd.*, No. 6:11-cv-622, 2014 WL 12465449 (E.D. Tex. Aug. 1, 2014).

For example, one of the agreements relied upon by Dr. Kennedy is ▮▮▮▮▮ which includes a license to Immersion's patents. The Immersion patents licensed under this agreement are limited by ▮▮▮▮▮ ▮▮▮▮▮ Contrary to Samsung's representations (Motion at 1, 3), ▮▮▮▮▮.



In addition to the license agreements themselves, Dr. Kennedy reviewed contemporaneous business documents, including ▊▊▊▊ ▊▊▊▊ ▊▊▊▊ Kennedy Report, ¶¶ 338-340, 350-351; Exs. 10-16.) These documents support Dr. Kennedy's conclusion that the patents-in-suit are the primary drivers of value in the hypothetical negotiation.[2] ▊▊▊▊ ▊▊▊▊ But Dr. Kennedy explained that these three others were of minimal relevance to a hypothetical negotiation in 2016 because they covered features that had become less important to smartphone manufacturers. (Kennedy Report, ¶¶ 341-342, 350.)

Dr. Kennedy ultimately concluded that, based on his analysis of Immersion's licensing practices, and the technical experts' opinion that the patents-in-suit are enabling, it would not be necessary to make any adjustment to the royalty rates for Basic Haptics Functionality, as essentially all of the value was driven by the patents-in-suit. (Kennedy Report, ¶ 353.) However, to be conservative, Dr. Kennedy attributed only 90 percent of the value to the patents-

---

[2] Dr. Kennedy also relied on technical experts Dr. Gutwin and Dr. Howe, who agreed that this methodology was reasonable. (Kennedy Report, ¶ 349, n. 574.)

9

in-suit, to account for the possibility that other, unasserted patents, cover additional valuable features. (Kennedy Report, ¶¶ 352-353.)

Even where Dr. Kennedy relied on statements from Ms. Maresh, he did not do so uncritically or without explaining his reasoning. Dr. Kennedy asked Ms. Maresh about ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, about the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and about how Immersion would assess the relative value of those patents for an Android smartphone manufacturer around the time of the hypothetical negotiation. Ms. Maresh provided context as to why the ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to Samsung at the time of the hypothetical negotiation, and Dr. Kennedy described this in his report in detail. (Kennedy Report, ¶¶ 340-342, 348-350.)

Moreover, Ms. Maresh's assessment that, in Immersion's view at the time of the hypothetical negotiation, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ would have been considered to have little incremental value, and certainly no more than 10% as compared to the 6 asserted patents, is supported by contemporaneous business documents that demonstrate ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and no longer asserted in litigation, a strong indication of no incremental value. (Kennedy Report, ¶¶ 340-342, 349; Exs. 13-16.) The other ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which is consistent with Immersion's assessment that they would have been of minimal importance in a hypothetical negotiation in 2016. In Immersion's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.



Immersion's royalty rates in its ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. These royalty rates are tied to the value of the important, enabling patents-in-suit, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. These ▬▬▬▬▬▬▬▬▬▬▬ royalty rates do not require apportionment. However, after apportioning for software versus patents, Dr. Kennedy provides an additional apportionment for any potential value associated with other Immersion patents. Dr. Kennedy's apportionment is consistent with Immersion's real-world licensing practices demonstrated in ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ regarding the value of its ▬▬▬ ▬▬▬▬▬▬▬▬ efforts to enforce its patents in litigation, its license agreements, and its testimony.

**B. Samsung's Own Expert, Mr. Bakewell, Relies Upon Dr. Kennedy's Apportionment Analysis When Calculating His Reasonable Royalty**

Notably Samsung's own expert, Mr. Bakewell, adopted Dr. Kennedy's methodologies in arriving at his royalty opinion. Mr. Bakewell utilizes Dr. Kennedy's software apportionment, without adjustment, in his calculation of the royalty rate from the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬. Mr. Bakewell starts with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and applies the same apportionment for software used by Dr. Kennedy. (Ex. 17 (Bakewell Report) ¶¶ 155-159 (describing Dr. Kennedy's software apportionment analysis), ¶ 161 (using rate calculated from Dr. Kennedy's software apportionment analysis); *see also id.*, ¶¶ 313-314.) Mr. Bakewell also applies Dr. Kennedy's portfolio apportionment methodology, and provides no alternative, stating: "Assuming there is at least one other patent (or patent group) contributing the 90% value Dr. Kennedy attributed to the patents-in-suit, and otherwise adopting Dr. Kennedy's assumptions about relative value,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶¶ 160, 303 (applying Dr. Kennedy's (hypothetically modified) apportionment to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Mr. Bakewell does not criticize Dr. Kennedy's apportionment methodology. He uses it. Mr. Bakewell may disagree with how Dr. Kennedy treated specific inputs, and with whether there are facts supporting a hypothetical unidentified other group of valuable patents, but these are not criticisms of the methodology itself. There is no basis for exclusion. *i4i Ltd. P'ship*, 598 F.3d at 852 ("When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility."), *aff'd on other grounds*, 131 S. Ct. 2238 (2011); *see also ActiveVideo*, 694 F.3d at 1333 (disagreements with the factual assumptions and considerations underlying an expert's conclusions go to weight, not admissibility).

### C. The Cases Relied On By Samsung Do Not Support Exclusion

Samsung relies on *Factory Mutual Insurance*, and similar cases for the proposition that an expert cannot merely "parrot" the statements of parties in an attempt to avoid hearsay rules, but the cases are inapposite. (*Factory Mutual Ins. Co. v. Alon USA L.P.*, 705 F.3d 518 (5th Cir. 2013.); Motion at 11.) *Factory Mutual* held there was no abuse of discretion where the district court allowed a damages expert to testify where part of his opinion (the amount a chemical plant had depreciated at the time it was destroyed) was based solely on a conversation he had with employees of that plant because that expert testified that "the estimates of others constitute the sort of information reasonably relied upon by appraisers approaching valuation questions." *Factory Mut.*, 705 F.3d at 525. Given this, the court held that the district court was "best placed to evaluate whether [the expert] uncritically relied upon" the client's own hearsay. *Id.* Here, as

discussed above, Dr. Kennedy considered numerous sources of evidence, including third-party licenses and Samsung's own documents, in addition to party testimony from Ms. Maresh. And just as in *Factory Mutual*, there is no basis for exclusion here.

Samsung also relies on *ROY-G-BIV Corp.* for a similar point, but it is inapposite. (*ROY-G-BIV Corp. v. ABB, Ltd.*, No. 6:11-cv-622, 2014 WL 12465449; Motion at 12.) In *ROY-G-BIV*, the damages expert apportioned costs to develop software between the value of that software and the value of the patented technology, but this opinion was limited to a single conclusory sentence and was based *solely* on conversations with plaintiff's employees and the named inventors, without providing any logical connection between the information in these conversations and the chosen apportionment number. *ROY-G-BIV*, 2014 WL 12465449, at *3 ("the cited paragraphs fail to show thorough analysis and merely state . . . conclusions."). Again, as shown above, Dr. Kennedy relied on multiple sources of evidence, including contemporaneous documents that Dr. Kennedy's methodology and the links between the evidence considered and his conclusions are fully disclosed, he does not simply state conclusions. There is no basis for exclusion.

Samsung also relies on *Blue Spike* to suggest that apportionment is necessary, but it is clearly distinguishable and does not support exclusion. (*Blue Spike, LLC v. Huawei Techs. Co., Ltd.*, C.A. No. 6:13-CV-679, 2016 WL 9286102 (E.D. Tex. Oct. 14, 2016); Motion at 13.) In *Blue Spike*, the court ordered that if an expert wished to offer testimony about his apportionment opinion, then the expert would have to provide a supplemental report supporting the apportionment percentage. *Blue Spike*, 2016 WL 9286102, at *4. This was because the expert used surveys that showed consumers value data security without any explanation for how this

related to the digital watermark patented technology. *Id*. The expert was attempting to apportion between patented and unpatented features and the survey was too general to do this and the expert did not explain any methodology. In this case, however, Dr. Kennedy fully explained his methodology and clearly linked all facts considered to his ultimate opinions.

Samsung most heavily relies on *Core Wireless*, but it too is inapposite. (*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG, 2016 WL 4440255 (E.D. Tex. Aug. 12, 2016); Motion at 13.) In *Core Wireless*, the court granted a new trial on damages because the expert based his opinions concerning the value of the patented technology in Android smartphones on an estimate of the cost of the Windows Mobile operating system from 5 years before the hypothetical negotiation date without explaining how this information was at all relevant to the analysis. *Core Wireless*, 2016 WL 4440255, at *11-13. The expert also failed to properly apportion because he simply chose a starting point of a $0.05 per unit royalty rate that was from a patent pool license that did not include the patents at issue in that case and did not perform any analysis as to whether that license was comparable to the hypothetical negotiation. *Id*. at 13-14. The expert in *Core Wireless* then adjusted this rate in $0.05 increments without any justification or evidence. *Id*. Here, Dr. Kennedy began with licenses that include the patents-in-suit, he analyzed how they were and were not comparable to the hypothetical negotiation and provided reasons for the adjustments he made to make them more comparable based on evidence in the case. He fully disclosed his methodology, and provided logical links between the evidence he considered and the impact it has on his opinion.

IV.  **CONCLUSION**

Samsung's Motion is based on disagreements about the significance of facts that Dr. Kennedy considers, not complaints about the methodology itself. Samsung is clearly not left

14

guessing what connection, if any, the facts Dr. Kennedy considered have to his conclusions. Samsung's Motion easily identified what Samsung considers to be contrary evidence that it can use in cross-examination of Dr. Kennedy and Immersion's other witnesses. Nothing Samsung has pointed to warrants exclusion. The Court should deny the Motion.

Dated: February 19, 2019

Respectfully submitted,

/s/  Bryan Wilson w/ permission Claire A. Henry
Bryan Wilson (CA SBN 138842)
LEAD ATTORNEY
Marc David Peters (CA SBN 211725)
Albert J. Rugo (CA SBN 306134) *admitted pro hac vice*
**MORRISON & FOERSTER LLP**
755 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: bwilson@mofo.com
Email: mdpeters@mofo.com
Email: arugo@mofo.com

Richard S. J. Hung (CA SBN 197425)
Christopher Robinson (CA SBN 260778)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7602
Facsimile: (415) 276-7334
Email: rhung@mofo.com
Email: ChristopherRobinson@mofo.com

Morgan Chu (CA SBN 70446)
Richard Birnholz (CA SBN 151543)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: mchu@irell.com
Email: rbirnholz@irell.com

15

pa-1884444

███████████████

        T. John Ward Jr.  
        Texas Bar No. 00794818  
        Claire A. Henry  
        Texas Bar No. 24053063  
        Andrea L. Fair  
        State Bar No. 24078488  
        **WARD, SMITH &HILL, PLLC**  
        1507 Bill Owens Pkwy.  
        Longview, TX 75604  
        Tel: 903/757-6400  
        Fax: 903/757-2323  
        Email: jw@wsfirm.com  
        Email: claire@wsfirm.com  

        *Attorneys for Plaintiff*  
        *Immersion Corporation*

pa-1884444

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Pursuant to Local Rule CV-5(a)(7)(D), all counsel of record were served with a true and cored copy of the foregoing by email on this the 19th day of February, 2019.

/s/ *Claire Abernathy Henry*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that on January 3, 2018 this Court entered a Protective Order (Dkt. No. 32) which authorizes filing the attached documents under seal.

/s/ *Claire Abernathy Henry*

pa-1884444