# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

IMMERSION CORPORATION,

      Plaintiff,

  v.

SAMSUNG ELECTRONICS AMERICA, INC. and
SAMSUNG ELECTRONICS CO., LTD.,

      Defendants.

Case No. 2:17-cv-00572-JRG
(LEAD CASE)

Case No. 2:18-cv-00055-JRG

**JURY TRIAL DEMANDED**

### SAMSUNG'S RESPONSE IN OPPOSITION TO
### IMMERSION'S *DAUBERT* MOTION TO EXCLUDE
### TESTIMONY BY MR. W. CHRISTOPHER BAKEWELL (ECF NO. 112)

███████████████████████████████████████████████

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 2

III.   APPLICABLE LEGAL PRINCIPLES ................................................................ 4

IV.    ARGUMENT ......................................................................................................... 4

    A.   The ███████████ Agreement ............................................................. 4

       1.   The ████████████ Agreement Is Relevant ...................................... 4

       2.   Mr. Bakewell's Analysis of the ██████████████ Agreement Is Based on a Reliable Methodology ........................................................... 8

    B.   The ██████████ Agreement ..................................................................... 11

    C.   In Any Event, There Is No Basis to Exclude Mr. Bakewell's Ultimate Royalty Rate Opinion ........................................................................................................... 14

V.     CONCLUSION .................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Active Video Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)..................................................................................14

*Affinity Labs of Texas, LLC v. Ford Motor Co.*,
    No. 1:12-CV-00580, 2014 WL 12638158 (E.D. Tex. Aug. 22, 2014)..................................10

*Bayer HealthCare LLC v. Baxalta Inc.*,
    No. 16-CV-1122-RGA, 2019 WL 330149 (D. Del. Jan. 25, 2019)........................................9

*DataQuill Ltd. v. High Tech Computer Corp.*,
    887 F. Supp. 2d 999 (S.D. Cal. 2011)....................................................................12

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)........................................................................1, 4, 7, 9

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)....................................................................6, 8, 10

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................11

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301, 1330 (Fed. Cir. 2009)........................................................................8

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 429 (2017)............................ *passim*

*Red Rock Analytics, LLC. v. Samsung Electronics Co., Ltd.*,
    No. 2:17-CV-00101-RWS-RSP, ECF No. 219 (E.D. Tex. Feb. 6, 2019) ................................9

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)....................................................................6

*Saffran v. Johnson & Johnson*,
    2:07-CV-451, 2011 WL 1299607 (E.D. Tex. Mar. 31, 2011) ...................................6

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
    802 F.3d 1283 (Fed. Cir. 2015)....................................................................4

*Valencia v. Singleton*,
    600 F.3d 389 (5th Cir. 2010) ....................................................................4

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*,
No. 10-CV-10578, 2016 WL 4727476 (E.D. Mich. Sept. 12, 2016)........................................6

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10, 30 (Fed. Cir. 2012)............................................................................................8, 9

███████████████████████████████████████████████████████

## I.    INTRODUCTION

The opinions of Mr. W. Christopher Bakewell are based on sound methodology and reliable evidence.  Mr. Bakewell provides a well-explained rebuttal to the opinions of Immersion's damages expert, Dr. Patrick Kennedy.  For example, he shows that ████████ ███████████████ ██████████████████████████████████████████, and that Samsung's primary competitor ███████████████████████.

Immersion's motion (ECF No. 112, "Mtn.") should be denied—it asks this Court to stray from clear Federal Circuit guidance.[1]  First, Immersion takes issue with the fact that Mr. Bakewell provides a basis for comparing the ████████████████████████ to the hypothetical negotiation by deriving an ██████████████ (reflecting the scope of the agreements).  Unlike Dr. Kennedy, who merely repeats the positions of his client (as discussed in Samsung's motion, ECF No. 110), Mr. Bakewell performs a careful analysis comparing the ████████████ to the hypothetical negotiation.  This is precisely the type of "basis for comparison" the Federal Circuit requires through *Lucent Techs.* and its progeny.  Instead of providing a similar analysis, Dr. Kennedy all-but ignores these agreements in favor of other, inflated agreements (involving software).  Second, Immersion asks this Court to disregard two highly relevant settlement agreements because they arose from litigation (where liability was in dispute).  The Federal Circuit rejected such a bright line in *Prism Techs.*, and explained in *ResQNet* that settlement agreements can be the most reliable evidence of a reasonable royalty.

Immersion's motion improperly attempts to convert *Daubert*'s requirement that the trial court determine whether an expert's methodology is scientifically sound into a much broader

---

[1] Immersion's motion was also filed after the February 4, 2019 deadline (on February 5, 2019) and should be denied for this independent reason.  *See* ECF No. 102 ("No motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court.").

████████████████████████████████████████████████

(and misplaced) inquiry into the weight of the evidence or which methodology is best.  That latter inquiry is the exclusive province of the jury.  Mr. Bakewell's opinions are the result of sound methodology based on reliable evidence.  Immersion's motion is a clear attempt to exclude licensing evidence that it does not like—the motion should be denied.

## II.    FACTUAL BACKGROUND

*Summary of Mr. Bakewell's opinion:* Mr. Bakewell opines that a reasonable royalty should be no more than ████████████████████████████████████████████

████████████████████████████████ Ex. A, Bakewell Rept. ¶ 11.  Given the lack of evidence of any quantification of the economic benefits of the patents-in-suit apart from licensing, both Mr. Bakewell and Immersion's expert Dr. Kennedy agree that the "market approach" (which "involves evaluating transactions for comparable technology" to the patents-in-suit) is the most instructive method for determining a reasonable royalty.  *Compare id.* ¶¶ 301-307 *with* Ex. B, Kennedy Rept. ¶ 258 ("I have seen no quantification of the economic benefits of the Patents-in-Suit outside of the value derived from licensing the patents").  Thus, Mr. Bakewell considered numerous licenses between Immersion, Samsung, and third parties, and opines that they support a royalty of ████████████████████████.  Ex. A, Bakewell Rept. ¶ 11.

*Dr. Kennedy's benchmark licenses:* Immersion's expert employs a similar methodology as Mr. Bakewell, focusing on allegedly comparable licenses.  Specifically, Dr. Kennedy focuses primarily on four agreements (including one settlement agreement):

- ███████████████████████████████████ (when all relevant time periods are included), prior to Dr. Kennedy's "adjustments" (Ex. B, Kennedy Rept. ¶¶ 199-201, 353);

- ██████████████████████████████ rior to adjustments (*id.* ¶¶ 138, 353);

- ████████████████████████████████ , prior to adjustments (*id.* ¶¶ 151, 353); and



- ███████████████████████████████████████, prior to adjustments (*id.* ¶¶ 147, 353).

Although Dr. Kennedy discusses a number of licenses, he unreasonably focuses on the agreements with inflated rates (*e.g.*, ██████████████████████), fails to apportion the value of the patents-in-suit, and all-but-ignores Immersion's █████████████. *See id.* ¶ 360. As a result, Dr. Kennedy's ████████████████████ for the six patents-in-suit is ██

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████. Ex. A, Bakewell Rept. ¶ 16. ███████████████████████

████████████████████████████████. *Id.* ¶ 275.

*Mr. Bakewell's benchmark licenses:* Although Mr. Bakewell describes the ██████████

████████████████████████████ and █████████████ agreement with

███ his analysis addresses a wide range of other comparable agreements, including, *inter alia*:

- ███████████████████████████████████████ (Ex. A, Bakewell Rept. ¶¶ 143, 161-162);

- ███████████████████████████████████████ (*id.* ¶¶ 238, 242, 248).

- ███████████████████████████████████████ (*id.* ¶¶ 258, 267, 270).

- **TFT/Samsung 2015 Agreement**, a ███████████████████████████ (*id.* ¶¶ 277, 282).

Based on Mr. Bakewell's analysis of all of the relevant licenses discussed in his report (including the above agreements and several others), he apportions for Immersion's six patents-in-suit and identifies a baseline royalty of ██████████████████. Ex. A, Bakewell Rept. ¶¶ 354, 356; *see also id.* ¶ 160 ████████████████████████████).

## III.     APPLICABLE LEGAL PRINCIPLES

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence if it involves scientific, technical, or specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-92 (1993).  A proper assessment under *Daubert* requires the district court to determine whether the "evidence is both relevant and reliable before it may be admitted." *Valencia v. Singleton*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert*, 509 U.S. at 592-93).

In deciding whether an expert's analysis meets the reliability factor of a *Daubert* and Rule 702 analysis, the district court is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein.  Determinations regarding the weight to be accorded, and the sufficiency of, the evidence relied upon by the proffered expert, are within the sole province of the jury.  *See, e.g.*, *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.").

## IV.     ARGUMENT

Mr. Bakewell's opinions are based on a sound, testable methodology, and reliable evidence.  Immersion's motion focuses on the *weight* of evidence, and should be denied.



**A.     The** ▮▮▮▮▮▮▮▮▮ **Agreement**

**1.     The** ▮▮▮▮▮▮▮▮▮▮▮▮ **Is Relevant**

The ▮▮▮▮▮▮▮▮▮ Agreement is one of the most—if not *the most*—comparable third party licenses to the hypothetical negotiation.  As Mr. Bakewell explains, "Immersion's ▮▮▮▮▮▮▮▮▮ is particularly informative because ▮▮▮▮▮▮ closest competitor of Samsung" for smartphones.  Ex. A, Bakewell Rept. ¶¶ 166, 262-263.  Since the rate is relatively low, Immersion now goes to great lengths to try to exclude it.  However, this was not the

██████████████████████████████████████████

position that Immersion took prior to this litigation; Immersion knew that it would be instructive.

The royalty Immersion was willing to accept ████████████████████████████

██ is relevant to determining what Immersion would accept from Samsung (and what Samsung

would be willing to pay).  Indeed, Immersion said so itself, pointing out that Samsung and others

████████████████████████████████████████████████

Moreover, whereas many of the agreements considered by Dr. Kennedy involved software (*e.g.*,

Immersion's agreements with ████████████████), the ████████████ more

comparable because it relates to patents rights and does not include software.  Ex. A, Bakewell

Rept. ¶ 258.  In fact, ████████████████████████████████████████

████ (one of which—████████████████████████).  *Id.* ¶¶ 258, 268-269.  Further,

Immersion's witnesses testified about similarities between the haptics in Samsung's phones ██

████████████████████████████████████████████████

████████████████████████████████ Ex. D, Jose Dep. at 40:1-19.

Immersion overstates the differences ████████████████████ and the hypothetical

negotiation.  For example, the fact ████████████████████ other patents in addition to

the patents-in-suit (*see* Mtn. at 6) supports a *lower* rate (which Mr. Bakewell addresses through

apportionment), whereas Immersion complains that the rate should be higher.  *See* Ex. A,

Bakewell Rept. ¶ 266 ("[T]he rights to other licensed products and additional patents means that

Samsung should expect to pay less ████████████████.");  *Prism Techs. LLC v. Sprint

Spectrum L.P.*, 849 F.3d 1360, 1370-71 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 429 (2017)

("That Agreement covered the patents at issue here, though not only the patents at issue here.  In

that common situation, evidence was needed that reasonably addressed what bearing the amounts

in that Agreement had on the value of the particular patents at issue here.").  Moreover,

██████████████████████████████

Immersion's damages expert relies ███████████████████ to support his proposed royalty. *See, e.g.*, Ex. B, Kennedy Rept. ¶ 335. And given that ████████████  ██████ ██████████, Immersion's observation that Mr. Bakewell "did no analysis of whether the [other] patents are technologically comparable to the patents-in-suit" (Mtn. at 6), notwithstanding Mr. Bakewell's apportionment to the patents-in-suit, is confounding.

Moreover, perfect identity is not required to show comparability. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010) ("In setting damages, the jury's function is to weigh contradictory evidence, to judge the credibility of the witnesses, and to resolve factual disputes."). While licenses that are radically different from the hypothetical one, or lacking explanation, can be excluded, differences do not preclude admissibility. *E.g.*, *Saffran v. Johnson & Johnson*, 2:07-CV-451, 2011 WL 1299607, at *10-11 (E.D. Tex. Mar. 31, 2011) (affirming verdict where expert discussed "similarities, and differences," between hypothetical and comparable licenses). The jury is "fully capable of evaluating the differences and similarities and deciding the weight to give" an agreement. *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-CV-10578, 2016 WL 4727476, at *11 (E.D. Mich. Sept. 12, 2016).

The fact ██████ "contested that its products infringed the patents at issue in the litigation" (Mtn. at 8) does not support disregarding ██████████ . Sometimes the most reliable licenses arise out of litigation (where liability is often disputed). *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("[T]he most reliable license in this record arose out of litigation."). The Federal Circuit acknowledges an "inherent connection between patent licenses and at least the potential for litigation"—a non-exclusive "license to practice a patent is in substance nothing but a covenant not to sue: what such a license is, at its core, is an elimination of the potential for litigation." *Prism Techs.*, 849 F.3d at 1370. Here, ██████

██████████████████████████████████████████████

agreement is among the most reliable licenses in the record.  Ex. A, Bakewell Rept. ¶ 166.

Immersion has identified no significant risk of a finding of noninfringement ████████

████ justifying exclusion of the license or even downward adjustment—indeed, ████████

████████████████ could have the impact of driving up a royalty, equalizing the contested

infringement. *Cf. Prism Techs.*, 849 F.3d at 1369 ("[V]arious factors may work in the opposite

direction, tending to make a settlement of an earlier suit too high as evidence on the valuation

question presented in a later suit.").  In addition, Immersion claims that there are no

noninfringing alternatives to the patents-in-suit.  *See* Ex. B, Kennedy Rept. ¶ 259 ("However, it

is my understanding from Immersion's technical experts that there are no commercially

acceptable non-infringing alternatives to the technology-at-issue").

Remarkably, Immersion tries to claim ██████████████ should be excluded

under *Dauber*t, even though its own expert, Dr. Kennedy also relies on settlement agreements

████████ with contested infringement.  *See* Ex. B, Kennedy Rept. ¶ 240 (relying on the

████████████████████); Ex. E, ██████████████████████████████

████████████████████████████████████████████████

████████████. In fact, a significant portion of Immersion's revenue has been

derived from such licenses that arise after litigation.  *See, e.g.*, Ex. F, Erba Dep. at 44:9-19.

Immersion's arguments regarding *upward* adjustments that it would prefer (*see* Mtn. at 7-

9) ignore the numerous *downward* adjustments that Mr. Bakewell conservatively did not apply.

For example, Mr. Bakewell explains how downward adjustments are warranted ████████

████████████ under the hypothetical negotiation that is limited to the six patents-in-suit (Ex. A,

Bakewell Rept. ¶ 268), and the extent to which the agreement may be a function of ████████

████████████████ (*id.* ¶ 269).  Rather than applying these downward adjustments, Mr.

████████████████████████████████████████████

Bakewell merely performed a conservative allocation to the patents-in-suit.  *Id.* ¶ 270.  In any

event, Immersion's arguments regarding what adjustments it thinks are warranted are within the

province of the jury—"to weigh contradictory evidence, to judge the credibility of the witnesses,

and to resolve factual disputes."  *Finjan*, 626 F.3d at 1212.  Further, Mr. Bakewell provides a

thorough discussion of the impact of disputed infringement and resulting uncertainty and

addresses how it impacts his opinion, noting that licensors are "reasonably hesitant to make

public offers, let alone enter into agreements that would provide what they perceive to be an

artificially low benchmark."  Ex. A, Bakewell Rept. ¶ 440; *see also id.* ¶¶ 437-439.  Contested

infringement does not support exclusion of Mr. Bakewell's opinions ████████████████.

### 2.   Mr. Bakewell's Analysis of the ████████████████ Agreement Is Based on a Reliable Methodology

Mr. Bakewell's analysis of the ████████████████████ is based on a sound

and reliable methodology.  Mr. Bakewell reasonably ████████████████████████████

████████████████████████████████████████████.

The Federal Circuit has long recognized that ████████████████████████

████████████████████████████████████████████

████████████████.  As the court in *Lucent Techs., Inc. v. Gateway, Inc.* explained, "some basis

for comparison must exist in the evidence presented to the jury."  580 F.3d 1301, 1330 (Fed. Cir.

2009); *see also* Mtn. at 14 (citing *Lucent Techs.*).  Likewise, the Federal Circuit in *Whitserve,*

*LLC v. Computer Packages, Inc.*, acknowledged that for ████████████████████

████████████████, there must be "testimony explaining how they apply to the facts of the

case."  694 F.3d 10, 30 (Fed. Cir. 2012); *see also* Mtn. at 1, 5 (citing *Whiteserve*).

Mr. Bakewell offers helpful testimony that provides a *basis for comparison*, explaining

how ████████████████ agreement *applies to the facts of the case*.  Specifically, to "█

██████████████████████████████████████████

████████████████████ ████████████████████," Mr. Bakewell

"considered the ████████████████████████████" based on ███

███████████████████████████████████████████

████████████████████(based on reliable estimates).  Ex. A, Bakewell Rept. ¶ 267.

This analysis yielded ███████████████████. *Id.*  Mr. Bakewell's ████████

allows the jury to see and understand █████████████████████████████ the

hypothetical negotiation.[2]  Absent such analysis, ████████████████ would risk

confusing the jury (particularly where Immersion's damages demand is ████████████

████████).  Remarkably, while it tries to claim that Mr. Bakewell's opinions do not pass

muster under *Daubert*, Immersion's expert Dr. Kennedy performs precisely this type of

comparison in his analysis of the ██████████████████████.  *See* Ex. B, Kennedy

Rept. ¶ 189 ████████████████████████████  This yet again shows

Immersion's true objective—to try to prevent the jury from seeing evidence that it does not like.

Unlike *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-CV-1122-RGA, 2019 WL 330149,

at *6 (D. Del. Jan. 25, 2019), where the expert made "no effort to reconcile" agreements having

multiple different payment contingencies and royalty structures (*see* Mtn. at 1, 5, 15), here, Mr.

Bakewell provides a basis for comparison ████████████████████ hypothetical

negotiation.  He considers, among other things, the time period, the licensed units, and the

projected extent of use to derive a scalable per-unit rate.  Ex. A, Bakewell Rept. ¶ 267.  This

Court has approved of precisely this type of analysis.  *See, e.g.*, Ex. G, *Red Rock Analytics, LLC.*

---

[2] Despite Immersion's suggestion that ████████████████████████████████████
Immersion ██████████████████████████████████████.  *See, e.g.*, Ex. F,
Erba Dep. at 233:15-234:4, 248:1-16; Ex. D, Jose Dep. at 164:13-165:2, 267:1-5; Ex. H, Viegas
Dep. (Sept. 29, 2015) at 148:5-24; *cf. Lucent Techs.*, 580 F.3d at 1327 (parties "may, during the
license negotiation [for a lump sum], consider the expected or estimated usage"); Mtn. at 14.

█████████████████████████████████████████████████

*v. Samsung Electronics Co., Ltd.*, No. 2:17-CV-00101-RWS-RSP, ECF No. 219 at 10-12 (E.D.

Tex. Feb. 6, 2019) (permitting conversion of a lump sum into a running royalty equivalent);

*Affinity Labs of Texas, LLC v. Ford Motor Co.*, No. 1:12-CV-00580, 2014 WL 12638158, at *3

(E.D. Tex. Aug. 22, 2014) (permitting "conversion of . . . lump-sum royalty to per-unit royalty").

The specific issues raised by Immersion regarding Mr. Bakewell's derived per-unit rate

(Mtn. at 6-9) go to weight—not to admissibility. *See Finjan*, 626 F.3d at 1212. Mr. Bakewell

has a sound basis for deriving ███████, and Immersion can cross-examine him about it.

The fact that Mr. Bakewell "included ████████████████████ in the

████████ (Mtn. at 7) is perfectly reasonable. The Apple agreement identifies the licensed

products as ████████████████████████," and the underlying

litigations involved the same products considered by Mr. Bakewell in identifying a

██████—█████████████████████. *See* Ex. A, Bakewell Rept. ¶¶

258-259. Immersion has identified no reason why differences in the prices and profits of

different products should impact the alleged incremental value of Immersion's patents-in-suit, or

why the time period ███████████████ should impact the royalty.

*See* Mtn. at 7. Any alleged impact can be addressed during cross-examination.[3]

The fact that Mr. Bakewell did not provide a different rate for U.S. sales as compared to

foreign sales also does not justify exclusion of his opinions. *See* Mtn. at 8-9. Immersion's own

expert, Dr. Kennedy also considered "global smartphone" sales in deriving an effective rate

████████████████████ *See, e.g.*, Ex. B, Kennedy Rept. ¶¶ 188-201.

Indeed, since ████████████████████████████

---

[3] ████████████ also relevant even if it is not ████████. For example ███
████████████████████████████████████



████████.  Mr. Bakewell also addresses a worldwide royalty rate in his analysis of the nature

and scope of the license in the hypothetical negotiation.  Ex. A, Bakewell Rept. ¶¶ 313-315.

Moreover, Immersion's ██████████████████████████████████ ignores that it has

asserted patents against Apple and Samsung in China (although Samsung recently invalidated

certain of Immersion's Chinese patents).  *See* Mtn. at 6 (describing Chinese litigation).

Mr. Bakewell's opinions about Immersion's ████████████████ are based on a

reliable methodology, ████████████████████████████ to scale for differences

in sales as compared to the hypothetical negotiation.  Immersion's motion should be denied.

**B.    The ████████████████ Agreement**

The ████████████ Agreement is also highly relevant, at least under *Georgia-*

*Pacific* factor 2: "The rates paid by the licensee for the use of other patents comparable to the

patent in suit."  *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.

1970).  The agreement demonstrates rates ████████████ for comparable patents, and is the

*only* agreement addressed by the experts covering haptic patents ████████████████.[4]

Moreover, the effective per-unit rate "falls into line with the effective royalty rates found in the

other agreements involving comparable technology."  Ex. A, Bakewell Rept. ¶ 284.

*First*, Mr. Bakewell provides a thorough discussion of technical comparability supported

by detailed analysis set forth in the expert reports of Samsung's technical experts, Dr. Andrew

Wolfe and Dr. Benjamin Bederson.  *See, e.g.*, Ex. A, Bakewell Rept. ¶¶ 279-281 (citing

discussions with technical experts comparing the covered ████████ and the patents-in-suit).

---

[4] Although ████████████████████████████████████ nearly identical to the

TFT lump sum.  Specifically, ████████████████████████████████████████

████████████  *See* Ex. A, Bakewell Rept. ¶ 439 (quoting ██████████████████).

████████████████████████████████████████████████████

As Mr. Bakewell explains, Samsung requested indemnity from Immersion when TFT sued it for use of *Immersion*'s haptic software in 2015 (before Samsung moved away from Immersion's software). *Id.* ¶ 279.  Although ████████████████████████████████████████████ ████████████████████████████████████████████████████ . Ex. F, Erba Dep. at 263:1-264:24; *cf.* Mtn. at 12.  Mr. Bakewell does not rely on just these facts—he cites detailed analysis from Dr. Wolfe and Dr. Bederson.  Immersion did not move to strike the technical comparability analysis of the ████████ in these experts' reports.  *See* Ex. I, Wolfe Rebuttal Rept. ¶¶ 39-43; Ex. J, Bederson Rebuttal Rept. ¶¶ 213-216.  "It is routine and proper for a damages expert in a technical patent case to rely on a technical expert for background." *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1026 (S.D. Cal. 2011).

   *Second*, Mr. Bakewell provides detailed analysis of economic comparability.  For one, the ████████ was "entered into around the same time as the hypothetical negotiation," and given that the hypothetical negotiation would focus on the six patents-in-suit, the agreement ████████████████████████████ is economically comparable.  Ex. A, Bakewell Rept. ¶¶ 278, 284.  Moreover, Mr. Bakewell addresses the impact of litigation, but notes a lack of "any actual information that the agreement was a function of the avoided costs of litigation, as opposed to the value of patent rights," and explains that ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ *Id.* ¶¶ 283-285; *see also Prism Techs.*, 849 F.3d at 1370 (cost of litigation does not automatically impact a settlement rate).  Immersion's assertion that Mr. Bakewell made "no adjustments based on the stage of litigation" (Mtn. at 10) ignores his explanation of the impact of the case proceeding through a *Markman* hearing, which represents a "big milestone when . . . assessing a

█████████████████████████████████████████████

license," noting that "if you get to that stage, you know the rights of the patent have been kind of developed in terms of a dialogue."  Ex. K, Bakewell Dep. at 139:19-140:24; *see also Prism Techs.*, 849 F.3d at 1371 (addressing the stage of litigation in assessing the reliability of settlement agreement).  Further, Mr. Bakewell explains that the effective per-unit rate ████████████ ████████████████████████████████████████████ involving comparable technology."  Ex. A, Bakewell Rept. ¶ 284.  Immersion will have an opportunity to cross-examine Mr. Bakewell about "adjust[ments to] his derived rate" that it believes are appropriate (Mtn. at 12), but that goes to weight—not admissibility.[5]

Immersion's efforts to differentiate itself from ████████████████████ are not compelling.  Regardless of whether ██████ products in the past, the hypothetical negotiation with Immersion would involve bare patent rights.  Thus, Immersion's past offerings "ranging from medical, gaming, mobility, automotive controls, and industrial applications" (Mtn. at 11) would not drive the rate for the patents-in-suit.  Moreover, Immersion has described itself as an "intellectual property and technology licensing company," and has ████████████████████ ████████████████████  Ex. A, Bakewell Rept. ¶¶ 49-58.  Further, Immersion makes much ado about its "prior business relationship with Samsung" (Mtn. at 11), but ignores the ████████ ████████████████████████████████████████████████ ██████████.  In any event, Mr. Bakewell takes the Immersion/Samsung relationship into account in reaching his opinions.  *See, e.g.*, Ex. A, Bakewell Rept. ¶ 162.

---

[5] Immersion states, in passing, that Mr. Bakewell "████████████████████████ ████████████████████████████████████████████ (Mtn. at 11), and resolved litigation involving smartphone and tablets (Ex. A, Bakewell Rept. ¶ 278).  Therefore, Mr. Bakewell's focus on ██████████████████████████████████████████ ██████.  *Id.* ¶ 282.

█████████████████████████████████████████████████████████

The ███████ and resulting agreement are relevant for another important reason—

███████████████████████████████████ represents a key milestone in the two parties'

relationship.  When █████████████████████████████████████████████████████

████████████████████████, the parties' relationship began to deteriorate.  *E.g.*, Ex. L, Hong

Dep. at 107:14-108:5, 128:22-129:3.  Ultimately, Samsung elected not to include Immersion's

software in its products going forward, and did not renew its license with Immersion.  Regardless

of the ███████████ and its rate, this relevant history should not be excluded from the trial.[6]

### C. In Any Event, There Is No Basis to Exclude Mr. Bakewell's Ultimate Royalty Rate Opinion

Immersion's effort to exclude Mr. Bakewell's "ultimate royalty rate opinions" should be

flatly rejected.  Mr. Bakewell's opinion is supported by numerous sources of evidence, including

but not ██████████████ and ████ agreements.  He carefully explains why Immersion's

demand for ████████████ ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

Ultimately, "[b]ased upon the *totality of the information presented throughout this

report*," Mr. Bakewell opines that a baseline royalty for the patents-in-suit falls in the range of

██████████████████.  Ex. A, Bakewell Rept. ¶¶ 354-356 (emphasis added).  Supporting this

range are ███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

---

[6] Immersion also exaggerates the comparability requirement (discussed above).  Mtn. at 10-13.
The "degree of comparability . . . as well as any failure on the part of [the expert] to control for
certain variables are factual issues best addressed by cross examination and not by exclusion."
*Active Video Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012).

███████████████████████████████████████████████

████████████████████████████████████ Thus, Immersion's

assertion that the "only [agreement] from which [Mr. Bakewell]████████████████

████████████ Mtn. at 13) is wrong, as is its claim that ████████████████████████ for

his calculations that lead to his per-unit royalty number" (Mtn. at 7).[7]

    Mr. Bakewell consistently explains that his opinions do not depend ███████████

agreements.  In his report, Mr. Bakewell clearly states that he does "not have any opinions

regarding the admissibility ██████████████████, and [his] opinions are not a

function ██████████████████ Ex. A, Bakewell Rept. ¶ 259 n.590.

Likewise, Mr. Bakewell stated that his opinions "are not a function of the ██████████

Agreement."  *Id.* ¶ 278 n.635.  In deposition, he confirmed that his opinion would not change if

either or both ██████████ agreements are not admissible, noting that he "provide[s] a

basis for the same conclusions elsewhere in [his] report," including but not limited to the

"licensing history between the parties."  Ex. K, Bakewell Dep. at 75:20-76:21.

    Further, Immersion's argument that Mr. Bakewell did not "adjust the rates to account for

undisputed, material differences between the agreements and the hypothetical negotiation" (*see,

e.g.*, Mtn. at 2) ignores that his proposed rate is based on the entire body of relevant agreements

and his detailed *Georgia-Pacific* analysis.  *See, e.g.*, Ex. A, Bakewell Rept. ¶ 354-359.

## V.   CONCLUSION

    For the foregoing reasons, Samsung requests that the Court deny Immersion's motion.

---

[7] The deposition testimony Immersion cites does not support its assertion that Mr. Bakewell's "calculation of a royalty was based solely on ████████████████████████ ████████ Mtn. at 7.  Instead, he testified that *the following* was ██████████████████████████████████████████████ ████████████████████████████████████ *Compare* Ex. A, Bakewell Rept. ¶ 302 *with* Ex. K, Bakewell Dep. at 88:18-90:9 ████████████████████████████████████████

Date: February 19, 2019                              Respectfully submitted,

                                        By:    */s/ Daniel A. Tishman*
                                               Ruffin B. Cordell
                                               TX Bar No. 04820550
                                               cordell@fr.com
                                               Michael J. McKeon
                                               DC Bar No. 459780
                                               mckeon@fr.com
                                               Indranil Mukerji
                                               MA Bar 644059
                                               mukerji@fr.com
                                               Stephen A. Marshall
                                               D.C. Bar No. 1012870
                                               smarshall@fr.com
                                               Daniel A. Tishman
                                               D.C. Bar No. 1013923
                                               tishman@fr.com
                                               **FISH & RICHARDSON P.C.**
                                               1000 Maine Avenue SW
                                               Suite 1000
                                               Washington, DC 20024
                                               Telephone: (202) 783-5070
                                               Facsimile: (202) 783-2331

                                               Leonard E. Davis
                                               TX Bar No. 05521600
                                               ldavis@fr.com
                                               Tom Gorham
                                               TX Bar No. 24012715
                                               gorham@fr.com
                                               **FISH & RICHARDSON P.C.**
                                               1717 Main Street, Suite 5000
                                               Dallas, TX 75201
                                               Telephone: (214) 747-5070
                                               Facsimile: (214) 747-2091

                                               Frank J. Albert (*pro hac vice*)
                                               CA Bar No. 247741
                                               albert@fr.com
                                               **FISH & RICHARDSON P.C.**
                                               12390 El Camino Real
                                               San Diego, CA 92150
                                               Telephone: (858) 678-5070
                                               Facsimile: (858) 378-5099

Tony Nguyen
TX Bar No. 24083565
nguyen@fr.com
**FISH & RICHARDSON P.C.**
1221 McKinney Street, Ste. 2800
Houston, TX 77010
Tel: 713-654-5300
Fax: 713-652-0109

Melissa Smith
TX Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934 – 8450
Facsimile: (903) 934-9257

**COUNSEL FOR DEFENDANTS SAMSUNG
ELECTRONICS AMERICA, INC. AND
SAMSUNG ELECTRONICS CO., LTD.**

████████████████████████████████

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that this document is filed under seal pursuant to the

Protective Order (ECF No. 32) filed in this matter.

*/s/ Daniel A. Tishman*
Daniel A. Tishman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on February 19, 2019.

*/s/ Daniel A. Tishman*
Daniel A. Tishman