**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| IMMERSION CORPORATION, | Case No. 2:17-CV-00572-JRG |
| *Plaintiff,* | LEAD CASE |
| v. | Case No. 2:18-cv-00055-JRG |
| SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD. | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**IMMERSION'S CORPORATION'S OPPOSITION TO SAMSUNG
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
THE '720 AND '181 PATENTS' CERTIFICATES OF CORRECTION**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF THE ISSUE TO BE DECIDED ............................................... 1

III.    RESPONSE TO SAMSUNG'S STATEMENT OF MATERIAL FACTS ....................... 2

IV.     STATEMENT OF FACTS ...................................................................................... 2

        A.      U.S. Patent No. 6,429,846 ........................................................................ 2

        B.      U.S. Patent No. 7,982,720 and U.S. Patent No. 8,031,181 .................................. 4

V.      LEGAL STANDARD ............................................................................................. 6

VI.     ARGUMENT ........................................................................................................... 7

        A.      Samsung Fails to Show that the Certificates of Correction Were Improper .......... 7

                1.      The Mistakes Were of Clerical or Typographical Nature ........................ 7

                2.      The Mistakes were Inadvertent and Corrected in Good Faith ................. 10

                3.      The Proposed Changes Would Not Require Re-Examination ................. 14

VII.    CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
  2009 WL 4670942 (E.D. Tex. Sept. 18, 2009) ........................................................................7

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
  98 F.3d 1563 (Fed. Cir. 1996) ................................................................................................7

*B. Braun Melsungen AG v. Becton, Dickinson & Co.*,
  2017 WL 2531939 (D. Del. June 9, 2017) ............................................................................15

*Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007) ...........................................................................................7, 8

*Cubist Pharms., Inc. v. Hospira, Inc.*,
  805 F.3d 1112 (Fed. Cir. 2015) .........................................................................................7, 10

*E.I. du Pont de Nemours & Co. v. MacDermid Printing Sol'ns,LLC*,
  525 F.3d 1353 (Fed. Cir. 2008) ..............................................................................................9

*Immersion Corp. v. HTC Corp.*,
  2015 WL 627425 (D. Del. Feb. 11, 2015) ..............................................................................6

*Immersion Corp. v. HTC Corp.*,
  826 F.3d 1357 (Fed. Cir. 2016.) ........................................................................................6, 11

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
  778 F.2d 1571 (Fed. Cir. 1985) ............................................................................................13

*In re Marshall*,
  1998 WL 35180967 (Comm'r Pat. Sept. 17, 1998,) ..............................................................10

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007) ............................................................................................10

*In re Patent No. 4,818,816*,
  1996 WL 34399740 (Comm'r Pat. May 31, 1996) ................................................................10

*Pfizer Inc. v. Teva Pharm. U.S.A., Inc.*,
  882 F. Supp. 2d 643 (D. Del. 2012) ......................................................................................15

*Rosen Entm't Sys, LP v. Icon Enters, Inc.*,
  359 F. Supp. 2d 902 (C.D. Cal. 2005) ..................................................................................12

**TABLE OF AUTHORITIES**
(cont'd)

Page(s)

*Simmons, Inc. v. Bombardier, Inc.*
  328 F. Supp. 2d 1188, 1201 (D. Utah 2004)..........................................................................10

*Superior Fireplace Co. v. Majestic Prods. Co.*,
  270 F.3d 1358 (Fed. Cir. 2001)................................................................................7, 12, 14

*Word to Info, Inc, v. Google Inc.*,
  140 F. Supp. 3d 986 (N.D. Cal. 2015) ......................................................................................9

**Statutes**

35 U.S.C. § 120..................................................................................................................6, 11

35 U.S.C. §§ 251-252 ..............................................................................................................11

35 U.S.C. § 255........................................................................................................ *passim*

35 U.S.C. § 282..........................................................................................................................7

**Other Authorities**

MPEP § 904.03 ........................................................................................................................15

MPEP § 1481 ................................................................................................9, 10, 13, 15

MPEP § 2734 ..............................................................................................................................8

## I.      INTRODUCTION

The PTO has a longstanding practice of issuing certificates of correction to correct priority claims under 35 U.S.C. § 255.  When Immersion discovered errors in the priority claims of the '846, '720, and '181 patents needing correction, Immersion petitioned for certificates to correct those errors.  The PTO granted the corrections, a decision entitled to a presumption of validity that Samsung can only overcome with clear and convincing evidence.

Samsung did not and cannot meet that burden.  The priority corrections for the '720 and '181 patents originated from a PTO mistake in the '846 patent for which the PTO issued a Certificate of Correction that Samsung does not contest.  Samsung minimizes the fact that the mistake that resulted in an earlier priority claim *was the direct result of the PTO's mistake* that was inadvertently carried over to subsequent continuation applications.  *The inventors' oaths did not request or claim the earlier priority date in the first place.*  By granting three certificates of correction for the same mistake in all three patents (the '846, '720, and '181 patents), the PTO already determined that the requirements to obtain certificates of correction were met.  The certificates are consistent with applicable law and the PTO's longstanding practice, and Samsung fails to provide a basis to disturb the PTO's determinations.  Samsung's motion also confirms that its motion should be denied, because Immersion's good faith in seeking correction is—at a minimum—a genuine dispute of material fact that precludes summary judgment.

## II.     STATEMENT OF THE ISSUE TO BE DECIDED

Whether certificates of correction related to U.S. Patent Nos. 7,982,720 and 8,031,181 are valid where (1) the errors needing correction originated from an error made by the PTO in their ancestor application, and (2) the corrections conform the priority claims to the correct information reflected in the inventors' oaths.

1

## III.    RESPONSE TO SAMSUNG'S STATEMENT OF MATERIAL FACTS

Undisputed.

## IV.    STATEMENT OF FACTS

### A.    U.S. Patent No. 6,429,846

The appropriate context for Samsung's motion requires a discussion of the application that resulted in U.S. Patent No. 6,429,846, entitled "Haptic Feedback for Touchpads and other Touch Controls."  Immersion filed Application No. 09/487,737 on January 19, 2000 as a continuation-in-part of Application No. 09/467,309, filed December 17, 1999.  (Samsung Ex. A ('846 Patent) at IMMR_SEC0002882, 2906.)

As part of the '846 patent application, the inventors filed an oath and declaration in which they *only* claimed priority to the '846 patent's immediate parent application, even though that application was itself a continuation-in-part of even earlier applications:

We hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this applications is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, § 112, we acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Prior U.S. Application(s)

| 09/467,309 | 12/17/99 | pending |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status - patented, pending, abandoned) |
| (Application Serial No.) | (Filing Date) | (Status - patented, pending, abandoned) |

(Samsung Ex. J ('846 Patent Inventor Oath) at IMMR_SEC00005660.)  The first sentence of the '846 patent application as filed made this same priority claim:



### CROSS REFERENCE TO RELATED APPLICATIONS

~~This application is a continuation-in-part of co-pending patent application no.~~ 09/467,309, entitled "Haptic Feedback for Directional Control Pads," filed ~~12/17/99~~ by Martin et al., ~~which is incorporated herein by reference in its entirety.~~

(Ex. 1 ('846 application as filed) at IMMR_SEC0000006.)  During prosecution of the '846

patent application, the applicants did not request any substantive changes to their priority claim.

But when the '846 patent issued on August 6, 2002, however, the PTO printed the patent

with priority claims under the "Related U.S. Application Data" section and in the first paragraph

of the specification under the "CROSS REFERENCE TO RELATED APPLICATIONS"

heading that included priority claims to applications earlier than Application No. 09/467,309.

(Samsung Ex. A at IMMR_SEC0002882.)  The applicants did not request any of these additions.

The PTO also made other mistakes in printing the '846 patent when it issued.  For

example, the preliminary amendment to the claims that the Examiner entered was not reflected in

the printed patent.[1]  The reason for the PTO's printing mistakes has never been understood.

Immersion only became aware of these errors related to the '846 patent years later in the

course of litigation.  On February 7, 2012, Immersion filed a complaint against Motorola in the

International Trade Commission (ITC) asserting six patents, including the '846, '720, and '181

patents.  On March 2, Immersion amended its ITC complaint to add HTC as a proposed

respondent, asserting the same patents.  That same day, Immersion filed suit against HTC in the

District of Delaware, asserting the same patents.  *Immersion v. HTC*, Case No. 12-cv-00259-

RGA (D. Del. 2012) (the "HTC litigation").  ITC procedures require the patentee to file a Notice

of Patent Priority Dates identifying the priority date for each asserted claim of the asserted

patents.  (Samsung Ex. F (Memo.) at 1.)  Accordingly, Immersion initially identified June 23,

1998 as the priority date for the '846 patent (and its descendants, including the '720 and '181

patents) based on the information on the face of the printed patent and its file history.  (*Id.*)  The

ITC respondents (HTC and Motorola) objected to the June 23, 1998 date (*id.* at 2), and

---

[1] A certificate of correction for that mistake was requested March 12, 2012 and granted May 8, 2012. (Samsung Mot. Exs. G (IMMR_SEC0002267) and A (IMMR_SEC0002897-2900).)

Immersion, after further investigation of the relevant patent specifications, sought to amend its notice because January 19, 2000 (the filing date of the '846 patent application) was the more strongly supported priority date for the asserted claims.  (*Id.*)

During these litigations, Immersion learned of the PTO printing error related to the priority claim of the '846 patent.  In November 2012, Motorola and Immersion settled their dispute.  After HTC settled and the HTC litigation ended on November 15, 2016, Immersion requested correction of the PTO's priority claim error under Section 254 (PTO Mistake).  (Samsung Ex. G ('846 File History) at IMMR_SEC0002326-2330.)  On January 24, 2017, the PTO issued the certificate of correction.  (*Id.* at IMMR_SEC0002331.)

## B.     U.S. Patent No. 7,982,720 and U.S. Patent No. 8,031,181

U.S. Patent No. 7,982,720 and U.S. Patent No. 8,031,181 are each part of a family of continuation applications (not continuations-in-part) stemming from the '846 patent.  The '720 patent, entitled "Haptic Feedback for Touchpads and other Touch Controls," was filed as Application No. 11/985,656 on November 15, 2007, and issued on July 19, 2011.  (Samsung Ex. B at IMMR_SEC0002952.)  The '720 patent application is a continuation of Application No. 10/213,940, filed on August 6, 2002, which is a continuation of Application No. 09/487,737, filed on January 19, 2000 (the '846 patent), which is a continuation-in-part of Application No. 09/467,309, filed on December 17, 1999.  (*Id.*)  The '720 patent has been re-examined.[2]  The '181 patent, entitled "Haptic Feedback for Touchpads and other Touch Controls," was filed as Application No. 11/981,501 on October 30, 2007, and issued on October 4, 2011.  (Samsung Ex. C at IMMR_SEC0002983.)  This application is a continuation of application Ser. No. 11/405,811, filed on April 17, 2006, which is a continuation of application Ser.

---

[2] On September 10, 2012, HTC filed a request for *ex parte* reexamination of the '720 patent. (Samsung Ex. N.)  The PTO granted HTC's request, reexamined the patent, and issued a reexamination certificate on February 18, 2014.  (Samsung Ex. B at IMMR_SEC0002977-78.)

No. 10/213,940, filed August 6, 2002, which is a continuation of application Ser.

No. 09/487,737, filed on Jan. 19, 2000 (the '846 patent), which is a continuation-in-part of

application Ser. No. 09/467,309, filed on December 17, 1999.  (*Id.*)

Like their ancestor application (the '846 patent), the '720 and '181 applications included

the inventors' oath and declaration that only claimed priority to December 17, 1999:

We hereby claim the benefit under Title 35, United States Code. § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this applications is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code. § 112, we acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations. § 1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Prior U.S. Application(s)

| 09/467,309 | 12/17/99 | pending |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status - patented, pending, abandoned) |
| (Application Serial No.) | (Filing Date) | (Status - patented, pending, abandoned) |

(Samsung Ex. J ('720 application inventors' oath) at IMMR_SEC0005675.)

We hereby claim the benefit under Title 35, United States Code. § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this applications is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code. § 112, we acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, § 1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Prior U.S. Application(s)

| 09/467,309 | 12/17/99 | pending |
|---|---|---|
| (Application Serial No.) | (Filing Date) | (Status - patented, pending, abandoned) |
| (Application Serial No.) | (Filing Date) | (Status - patented, pending, abandoned) |

(Samsung Ex.K ('181 application inventors' oath) at IMMR_SEC0004699.)

However, despite the clear priority claim in the inventors' oaths, the prosecuting

attorneys of the '720 and '181 applications inadvertently carried over the erroneous priority

information that the PTO mistakenly printed in the issued '846 patent.  (Samsung Ex. J at

IMMR_SEC0005656; Ex. K at IMMR_SEC0004680.)  Accordingly, the '720 and '181 patents

issued with priority data inconsistent with the actual priority claimed in the inventor oaths.

(Samsung Ex. B at IMMR_SEC0002952; Ex. C at IMMR_SEC0002983.)

5

Immersion only became aware of these errors related to the '720 and '181 patents after filing suit against HTC.  (Samsung Ex. J at IMMR_SEC0005657; Ex. K at IMMR_SEC0004681.)  In the course of that litigation, the District Court ruled on February 11, 2015 that the '720 and '181 patents were invalidated by their own specification (a foreign counterpart application published on July 26, 2001) because they were not entitled to claim priority to the '846 patent's filing date (January 19, 2000) under 35 U.S.C. § 120.  *Immersion Corp. v. HTC Corp.*, 2015 WL 627425, at *3 (D. Del. Feb. 11, 2015).  Immersion appealed the invalidity ruling to the Federal Circuit, which reversed the District Court's decision on June 21, 2016.  *Immersion Corp. v. HTC Corp.*, 826 F.3d 1357 (Fed. Cir. 2016.)  The District Court dismissed the case on August 29, 2016.  (Samsung Ex. K at IMMR_SEC0004753.)  Shortly thereafter, Immersion "thoroughly and diligently investigated and researched the necessity of a certificate of correction and how to seek a certificate of correction" in connection with the priority claims of the '720 and '181 patents, and filed requests for correction in December 2016, explaining the above circumstances.  (Samsung Exs. J at IMMR_SEC0005657; Ex. K at IMMR_SEC0004681.)  The PTO granted the requests and issued certificates of correction.

## V.    LEGAL STANDARD

Under 35 U.S.C. § 255, entitled "Certificate of correction of applicant's mistake," the PTO is authorized to issue a certificate of correction for certain mistakes made by the applicant:

> Whenever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith, the Director may, upon payment of the required fee, issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination.  Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.

35 U.S.C. § 255.

According to the Federal Circuit, such mistakes fall into three categories. The first is "mistakes [that] are immediately apparent and leave no doubt as to what the mistake is." *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1369-70, 1370 (Fed. Cir. 2001). The second category is "those typographical mistakes not apparent to the reader at all." *Id.* The third category covers mistakes "where it is apparent that a mistake has been made, but it is unclear what the mistake is." *Id.* "Since an error of the first category makes its own correction known to one of skill in the art, those errors do not raise serious public notice problems and can properly be corrected via a § 255 certificate." *Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1354 (Fed. Cir. 2007).

Certificates of correction are entitled to a presumption of validity.  35 U.S.C. § 282; *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 WL 4670942, at *3 (E.D. Tex. Sept. 18, 2009).  This presumption, based on the assumption of the administrative correctness of PTO actions, can only be overcome by clear and convincing evidence.  *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996).

## VI.   ARGUMENT

### A.   Samsung Fails to Show that the Certificates of Correction Were Improper.

Samsung has failed to prove that the certificates of correction, presumed to be valid, were improperly granted.  "Once the PTO has issued a certificate of correction, a court may invalidate the certificate only upon a showing of clear and convincing evidence that it was improperly issued."  *Cubist Pharms., Inc. v. Hospira, Inc.*, 805 F.3d 1112, 1118 (Fed. Cir. 2015).

#### 1.   The Mistakes Were of Clerical or Typographical Nature

Samsung does not contest the original PTO error in the '846 patent.  It only now contests the errors that were inadvertently carried over to the '720 and '181 patents from the unchallenged, now-corrected mistake in the '846 patent.  In all three patents, the inventor oaths

claimed priority under Section 120 *only* to the December 17, 1999 date of the '846 patent's immediate parent application.  However, when printing the '846 patent, the PTO incorrectly included priority information that was neither requested nor claimed by the applicant, errors which Immersion inadvertently carried over to the '720 and '181 patents.  The *only* changes in both certificates of correction now at issue were to conform the patents to the correct priority claims made in the '720 and '181 inventor oaths.

The '720 and '181 priority claim mistakes were clerical or typographical.  The corrections did not change the claim language and no new matter was added.  Because the inventors' oaths state the correct priority information, the mistake itself is readily apparent from the prosecution histories of the patents.  (Samsung Ex. J at IMMR_SEC0005656; Samsung Ex. K at IMMR_SEC0004680.)  Such mistakes that are "immediately apparent" and leave no doubt as to what the mistake is "do not raise serious public notice problems and can properly be corrected via a § 255 certificate."  *Cent. Admixture Pharm.*, 482 F.3d at 1354.

Samsung argues that these corrections are improper because correcting the priority to a later date impacts the term of the patent and would alter the substantive rights conveyed by the patents.  (Samsung Mot. at 6.)  This argument ignores that the PTO regularly issues certificates of correction that impact patent terms, including corrections to the term itself such as changing the number of days of a patent term adjustment.  *See* MPEP § 2734 (Application for Patent Term Adjustment).[3]  Samsung also misstates the applicable standard in framing its argument.  Both the courts and the PTO have a longstanding practice of approving corrections to priority claims through certificates of correction.  Every court that has considered the use of certificates of

---

[3] MPEP § 2734(I) ("If the patent term adjustment redetermination results in the amount of patent term adjustment requested by the applicant, the Office will issue a decision granting the request for reconsideration and a ***certificate of correction*** that indicates the revised patent term adjustment.") (emphasis added).

8

correction to priority errors under Section 255 has found it to be permissible.  Samsung

acknowledges these cases.  (Samsung Mot. at 8.)  The Federal Circuit has approved the use of

Section 254 certificates of correction to correct a priority claim, *see E.I. du Pont de Nemours &*

*Co. v. MacDermid Printing Sol'ns,LLC*, 525 F.3d 1353, 1362 (Fed. Cir. 2008), and at least one

court has held that "the similarities between sections 254 and 255 . . . make [*MacDermid*]

instructive" with respect to fixing Section 120 mistakes with a Section 255 certificate of

correction.  *Word to Info, Inc, v. Google Inc.*, 140 F. Supp. 3d 986, 996 (N.D. Cal. 2015).

The PTO also has a longstanding practice of permitting corrections to priority claims

through certificates of correction under Section 255.  "[T[he PTO has allowed patentees to use

section 255 certificates of correction to correct section 120 priority chains since at least as early

as 1976."  *Word to Info*, 140 F. Supp. 3d at 995 (citing *In re Lambrech*, 1976 WL 20974

(Comm'r Pat. Aug. 26, 1976)).  MPEP § 1481 expressly permits the use of certificates of

correction to correct a claim to priority under Section 120:

> Under certain conditions as specified below a certificate of correction can be
> used, with respect to a benefit claim under 35 U.S.C. 120, 121, 365(c), or 386(c),
> to correct:
>> (A) the failure to make reference to a prior copending nonprovisional application,
>> international application designating the United States, or international design
>> application designating the United States pursuant to 37 CFR 1.78(d)(2);
>> **(B) an incorrect reference to a prior copending nonprovisional application,**
>> international application designating the United States, or international design
>> application designating the United States pursuant to 37 CFR 1.78(d)(2);
>> (C) the failure to make reference to a prior provisional application pursuant to 37
>> CFR 1.78(a)(3); or
>> (D) an incorrect reference to a prior provisional application pursuant to 37 CFR
>> 1.78(a)(3).
>> * * *
> Except in certain situations, if all the above-stated conditions for benefit claims
> discussed in A.1-3 are satisfied, a certificate of correction can generally be used to
> amend the patent to make reference to a prior application, or to correct an
> incorrect reference to the prior application.  (emphasis added.)

The changes at issue here fall directly within this statutory framework and the PTO's corresponding practices.  The inventors' oaths show that there is no question that the priority claims in the printed '846, '720 and '181 patents to anything earlier than the December 17, 1999 date of the '846 patent's immediate parent application were "an incorrect reference to a prior copending nonprovisional application."  MPEP § 1481.

Samsung complains that the correction gives the patents a later priority date but cites no authority holding that a certificate of correction doing so is improper.  Instead, Samsung cites cases that are distinguishable and inapposite.  *In re Patent No. 4,818,816*, 1996 WL 34399740, at *7 (Comm'r Pat. May 31, 1996), and *In re Marshall*, 1998 WL 35180967, at *11 (Comm'r Pat. Sept. 17, 1998,) both involved situations where the petitioner sought to replace a voluntarily filed terminal disclaimer with another, less onerous one.  *Simmons, Inc. v. Bombardier, Inc.* concerned an incorrect recitation of relationships between patents, where the patent owner chose ***not*** to correct the patent.  328 F. Supp. 2d 1188, 1201 (D. Utah 2004).  Samsung cites *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1233 (Fed. Cir. 2007) for the proposition that a claim for priority is "inherently material to patentability," but fails to explain why that could preclude correction of priority dates under Section 255 when it has been permitted by both the courts and PTO.

### 2.      The Mistakes were Inadvertent and Corrected in Good Faith.

Samsung argues that the corrections were not made in good faith, but for its motion to be granted it must show this by such clear and convincing evidence that judgment as a matter of law is appropriate.  *See Cubist Pharm.*, 805 F.3d at 1118.  Samsung cannot do so.

The record confirms that Immersion's certificates of correction were requested in good faith.  As explained to the PTO, the errors in the '720 and '181 patents stemmed from the ***PTO's*** original mistake in the '846 patent, inadvertently carried over to the '720 and '181 patents during prosecution.  (Samsung Ex. J at IMMR_SEC0005656; Ex. K at IMMR_SEC0004680.)

Immersion first discovered the errors after the patents issued and after having sued HTC, a critical fact that impacted the timing of the requests for correction.  Because certificates of correction are not retroactive as to existing litigation, it would have made no difference to the HTC litigation.  35 U.S.C. § 255.  Moreover, the District Court held both the '720 and '181 patents invalid, a decision that remained in place until it was reversed by the Federal Circuit on June 21, 2016.  *Immersion Corp. v. HTC Corp.*, 826 F.3d 1357 (Fed. Cir. 2016.)  There was no reason for Immersion to seek to correct a patent that the District Court held to be invalid.  As soon as the Federal Circuit's decision issued and the HTC litigation ended, Immersion promptly looked into the requirements for filing the petitions for correction, which it filed in December 2016.  (Samsung Ex. J at IMMR_SEC0005654; Ex. K at IMMR_SEC0004678.)

To show that the certificates were requested in bad faith, Samsung must provide clear and convincing evidence of a lack of good faith.  Instead of evidence, however, Samsung offers only speculation, stating that Immersion "*likely learned* of these errors from a pre-suit investigation" (Samsung Mot. at 10) (emphasis added) and that Immersion "*should have known* the underlying error at the time the '846 patent issued."  (Samsung Mot. at 9 (emphasis added).)  "Should have known" and "likely learned" is not evidence of bad faith.

Samsung further speculates that the time it took Immersion to request the corrections evidences bad faith.  (Samsung Mot. at 9-10.)  This is also not well taken.  As explained above, Immersion did not know of the errors until after suing HTC, the patents were ruled invalid during the HTC litigation, and Immersion promptly requested correction soon after the Federal Circuit reversed the decision and the case was dismissed.  In any event, timing is not an issue— Section 255 does not have a time bar provision.  The Federal Circuit has contrasted the explicit two-year time bar for broadening reissues under 35 U.S.C. §§ 251-252, with the absence of a

time bar for certificates of correction under 35 U.S.C. § 255.  *Superior Fireplace*, 270 F.3d at 1371; *id.* at 1380 ("The majority cites the two-year time bar for obtaining a broadening reissue under section 251 and notes that ***no similar time limit applies to broadening certificates under section 255***.") (Dyk, J., dissenting) (emphasis added).  An argument analogous to Samsung's was rejected in *Rosen Entm't Sys, LP v. Icon Enters, Inc.*, 359 F. Supp. 2d 902 (C.D. Cal. 2005), a terminal disclaimer case where the court held that filing a certificate of correction five years after issuance "does not by itself show that [plaintiff] filed the certificate of correction with the intent to deceive the PTO . . . [s]uch suggestion involves [defendant's] speculation as to why [defendant] filed the certificate of correction."  *Id.* at 910.

Samsung argues that Immersion's licensing activities are supposed evidence of bad faith, citing Immersion's settlements with Motorola and HTC.  (Samsung Mot. at 9-10; Samsung Exs. L & M.)  They are not.  The actions against Motorola and HTC involved other patents (including the '846 and '288 patents, also asserted in this action) in addition to the '720 and '181 patents— and both settlements included ***portfolio-wide*** licenses (*see* Ex. 2 at IMMR_SEC00014600, -602; Ex. 3 at IMMR_SEC00023140-43).  Moreover, the HTC settlement was in March 2015, ***after*** the '720 and '181 patents had been held invalid by the District Court.  (Samsung Ex. L.)  Thus, Immersion's licensing of its entire portfolio as part of the settlements is not evidence of any bad faith whatsoever.  Even if Samsung's speculation "raises doubts about whether the mistakes were made in good faith" (Samsung Mot. at 1), doubts are not clear and convincing evidence.

Samsung likewise tries to discredit Immersion for moving to amend its notice of priority dates for the '720 and '181 patents in the ITC to dates different from the priority claims corrected by the certificates of correction.  (Samsung Mot. at 10.)  Again, Samsung fails to tell the whole story.  The motion sought to request a different priority date not only for the '720 and

'181 patents, but also for the '846 patent and others in the same family.  (Samsung Ex. F (Memo.) at 1.)  Immersion had initially asserted June 23, 1998 as the priority date, because that was the date that (mistakenly) appeared on the face of all the patents.  (*Id.*)  HTC and Motorola had objected to that date in the notice (*id.* at 2), and Immersion sought to amend its notice because the '846, '720, and '181 patent claims (which all recite "touch input device" or "touch screen") are more strongly supported by the '846 patent specification (filed on January 19, 2000).  And Samsung fails to note that, in this case, Immersion has from the outset asserted that the '846, '720, and '181 patent claims are entitled to a priority date of January 19, 2000 (the same as in the ITC).  (Ex. 4 (Feb. 20, 2018 Interrogatory Responses) at 19, 20.)

Finally, Samsung attempts to argue bad faith because the corrections moved the priority dates forward (Samsung Mot. at 11-12).  That has no bearing on either good or bad faith. Notably, Samsung does not fault the '846 patent's Section 254 certificate of correction correcting its priority claim, even though that ***also*** moved the patent's priority date forward.  Samsung cites no authority holding that it would be improper to correct patents under Section 255 to have a later priority date.  Indeed, the PTO expressly allows deleting an incorrect reference to a prior copending nonprovisional application, thereby moving priority dates forward.  MPEP § 1481.

Even if Samsung's arguments are credited, good faith is a factual issue not appropriate for summary judgment.  "Good faith, intent to deceive, scienter, honest mistake are all questions of fact."  *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573-74 (Fed. Cir. 1985). Immersion truthfully told the PTO that it learned of the mistaken priority claims "[d]uring litigation that was initiated in 2012" and sought to correct them after the validity of the '846 patent continuations had been resolved.  (Samsung Ex. J at IMMR_SEC0005657; Ex. K at IMMR_SEC0004681.)  The Court must accept this as true and should deny Samsung's motion.

### 3.      The Proposed Changes Would Not Require Re-Examination

Samsung also incorrectly argues that the certificates fail because of a purported need for reexamination.  The corrections to the '720 and '181 patents did not require re-examination.  By issuing the certificates of correction for the '846, '720 and '181 patent *related to the same mistake*, the PTO has already *thrice* determined that re-examination was not required.  The PTO is in the best position to determine whether a particular circumstance requires reexamination under the PTO's practices, and the PTO's determination that correcting the priority claim in these patents to reflect the claim made by the inventors would not require reexamination should not be disturbed.  *See Superior Fireplace,* 270 F.3d at 1367 n.1 (noting that presumption of validity "is related to the presumption that the PTO does its job properly.").)

Samsung incorrectly argues that the changes would require re-examination because the PTO would have overlooked pertinent prior art between the earlier priority date (June 23, 1998) and the corrected priority date (December 17, 1999).  (Samsung Mot. at 12-13.)  But Samsung ignores the many prior art references in this "gap" period that were already before the PTO for review.  The '720 patent has been re-examined and upheld over references within the gap period, including some—Tsuji, Okamoto, Beeks, and Fish—that Samsung asserted in this case. (Samsung Ex. N at 16.)  And Immersion submitted many references within the gap period in connection with the '181 patent, including:

- U.S. Patent No. 6,373,463 ("Beeks"), filed on October 14, 1998
- Japanese Patent No. 11-085400 ("Okamoto"), published on March 30, 1999
- U.S. Patent No. 6,359,550, filed on April 8, 1999
- U.S. Patent No. 6,337,678 ("Fish"), filed on July 21, 1999

(Samsung Ex. C ('181 patent) at IMMR_SEC0002985, 2986-87.)  The PTO had ample opportunity to review references falling within the period for which Samsung contends re-examination would be warranted.  The fact that the Examiner did not cite a specific reference

does not necessarily mean the examiner did not consider it, or did not have opportunity to do so. "[T]he examiner is not called upon to cite all references that may be available, but only the 'best,'" because an undue number of duplicative (or less pertinent) references "adds to the cost and burden of prosecution and should therefore be avoided."  MPEP § 904.03.  For example, the examiner could have considered Oross as less pertinent than, or duplicative to, other cited references.  *See, e.g., B. Braun Melsungen AG v. Becton, Dickinson & Co.*, 2017 WL 2531939, at *3 (D. Del. June 9, 2017) (finding certificates of correction to priority claim valid even though "Defendants point to prior art references on the face of the '959 patent that are missing from the Kuracina patents.  I am not at all persuaded that this constitutes clear and convincing evidence that the patent examiner did not consider all of the 'pertinent' prior art.") (citation omitted). Samsung has not shown that any uncited references in the gap period are not duplicative of the cited references (including those with dates in the gap period) such that re-examination was necessary.  *See Pfizer Inc. v. Teva Pharm. U.S.A., Inc*., 882 F. Supp. 2d 643, 698 (D. Del. 2012) ("[O]ther than arguing generally that such a change will require reexamination, the defendants do not present any evidence to support the assertion that reexamination is required in this case or that the Examiner failed to consider this point.").

Finally, the MPEP also directs the PTO how to handle corrections that do require further reexamination—a reissue application.  *See* MPEP 1481.  The PTO could have denied the requests for certificates of correction and required Immersion to file reissue applications instead. But it did not, because it determined that no further reexamination was required.  On the record presented by Samsung, the PTO's determinations should not be disturbed.

## VII.    CONCLUSION

Immersion respectfully requests that the Court deny Samsung's partial motion for summary judgment.

15

Dated:  February 25, 2019                    Respectfully submitted,


_/s/ Marc David Peters w/permission Claire_
_Henry_
Bryan Wilson (CA SBN 138842)
LEAD ATTORNEY
Marc David Peters (CA SBN 211725)
Albert J. Rugo (CA SBN 306134) _admitted_
_pro hac vice_
**MORRISON & FOERSTER** LLP
755 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 813-5600
Facsimile: (650) 494-0792
Email: bwilson@mofo.com
Email: mdpeters@mofo.com
Email: arugo@mofo.com

Richard S. J. Hung (CA SBN 197425)
Christopher Robinson (CA SBN 260778)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7602
Facsimile: (415) 276-7334
Email: rhung@mofo.com
Email: ChristopherRobinson@mofo.com

Morgan Chu (CA SBN 70446)
Richard Birnholz (CA SBN 151543)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: mchu@irell.com
Email: rbirnholz@irell.com

T. John Ward Jr.
Texas Bar No. 00794818
Claire A. Henry
Texas Bar No. 24053063
Andrea L. Fair

State Bar No. 24078488
**WARD, SMITH &HILL, PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: 903/757-6400
Fax: 903/757-2323
Email: jw@wsfirm.com
Email: claire@wsfirm.com

*Attorneys for Plaintiff*
*Immersion Corporation*

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email on this the 25th day of February, 2019.

*/s/ Marc David Peters*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that on January 3, 2018 this Court entered a Protective Order (Dkt. No. 32) which authorizes filing the attached documents under seal.

*/s/ Marc David Peters*